## J. MURPHY THOMAS *v*. LEE COUNTY.

[53 South. 585.]

COUNTIES. *County bonds. Highways. Laws* 1910, *ch.* 149. *Petition. Election. Constitutional law. Constitution of* 1890, § 170.

The statute, Laws 1910, ch. 149, authorizing the board of supervisors to issue bonds and levy taxes upon parts of the county for the construction and maintenance of highways and regulating such construction and maintenance: .

(a) Is not unconstitutional as violative of Constitution 1890, § 170, conferring jurisdiction on the board of supervisors "over roads, ferries and bridges, to be exercised in accordance with such regulations as the legislature may prescribe;" and

(b) Where the board received and approved a petition for the construction of a highway in a district and for the issuance of bonds therefor and to extend the roads beyond the district, and give notice of the intention to issue bonds for the two purposes, it could, after the filing of protest against the bonds, order an election submitting the issuance of the bonds for the single purpose of constructing the highway; and

(c) Where a petition for the construction of a highway and for the issuance of bonds therefor is filed with the board and a notice of intention to issue bonds is published, all persons in the district are parties and are precluded by the proceedings of the board to which they do not object.

FROM the chancery court of Lee county.

HON. JOHN QUITMAN ROBBINS, Chancellor.

Thomas, appellant, was complainant in the court below; the members of the board of supervisors of Lee county were, personally made defendants and so were the sheriff and three road commissioners of the county. By order of the court the pleadings are set out in full. The bill of complaint was in words and figures following:

J. M. Thomas, ——————,

v.

Board of Supervisors Lee county et al.

"To the Chancery Court of Lee County, Mississippi:

"Your complainant, a resident citizen of the city of Tupelo, and in the third board of supervisors' district of the county of Lee and state of Mississippi, would respectfully show and represent unto the court that he is a taxpayer in and for the third board of supervisors' district of said county and state and sues the following named parties, defendants: The board of supervisors of Lee county, Mississippi, comprised of B. F. Parker, president, and Will Milam, W. T. Pound, W. D. McGaughey, and M. E. Conwill; also Norbin Jones, clerk of the board of supervisors; O. T. Thrapp, sheriff and tax collector; D. W. Robbins, H. B. Heard, and Emmett Whitesides, the last three being commissioners appointed by the board of supervisors to construct and supervise highways in the third district of said county and state. All of the defendants above named being residents of the county of Lee and state of Mississippi.

"Your complainant would respectfully represent and show unto the court as follows:

"That on the 10th day of March, 1910, there was filed with the clerk of the board of supervisors of said county and state a petition, being numbered thirty-seven on the docket of the board of supervisors, entitled 'Petition of W. D. Anderson, et al.,' signed by the said W. D. Anderson and more than four hundred others, resident citizens and qualified electors of the third board of supervisors' district of Lee county, Mississippi, as shown by a copy of said petition attached and marked 'Exhibit A.' All of the names to said petition, however, not being copied in said exhibit, said petition praying for the construction and maintenance of public roads in the third supervisors' district of said county, under and by virtue of chapter 149 of the Laws of Mississippi of 1910; same being Senate Bill No. 66.

"That on the 10th day of March, 1910, the board of supervisors made an order with reference to said petition, granting the prayer of said petition and ordering publication of notice to the qualified electors of the third supervisors' district of said county any state; the copy of said order containing said notice hereto attached and marked 'Exhibit B' to this bill.

"That on the 6th day of April, 1910, proof of publication was made and filed in accordance with the aforementioned order of the board of supervisors, being the notice to the qualified electors of the third supervisors' district, Lee county, Mississippi, was filed with the clerk of said board, as shown by Exhibit C.

"That on the 2d day of April, 1910, a petition or petitions of M. A. Reese et al. were filed with the board of supervisors as shown by Exhibits D, E, F, and G; said petition being signed by more than twenty per centum of the qualified electors of said district; said petitions asking the board not to issue bonds as contemplated for such construction and maintenance of said public roads; said petitions being copied, excepting that all the names signed thereto are not copied.

"That on the 6th day of April, 1910, the board of supervisors, as shown by a copy of said order hereto attached and marked 'Exhibit H,' recorded in minute book 10, pages 39 and 40 of the minutes of said board of supervisors of said county and state, by the terms of which it was ordered by the board of supervisors that an election should be held on the 29th day of April, 1910, that the qualified electors of said district might determine whether or not bonds of said district should be issued for the purpose of constructing and maintaining public roads. That on April 13, 1910, the commissioners of election gave a notice of the election a copy of which is filed as 'Exhibit H½.'

"That on the 5th day of May, 1910, proof of publication of notice to the qualified electors of said district of the purpose of submitting said question to the qualified electors was filed with the board of supervisors, as shown by copy of same attached hereto and marked 'Exhibit I.'

"That a copy of said notice so ordered to be published and which was ordered by the board on the 6th day of April, 1910, is hereto attached and marked 'Exhibit J.'

"That on the 5th day of May, 1910, the board of supervisors of said county passed an order declaring the election held on April 29th to have been legally held and conducted and approving the returns of the commissioners of said election, and declaring the result of said election to be in favor of the issuance of the bonds of said third supervisors' district, and further ordering that D. W. Robbins, H. B. Heard, and Emmett Whitesides be appointed commissioners for said district, investing them with all the powers appertaining to said office for the term of four years; a copy of said order being hereto attached and marked 'Exhibit K,' said order recorded in Minute Book 10, pp. 61-64.

"That on June 14, 1910, the board of supervisors passed an order of publication of notice of the bond issue contemplated, as will be shown by copy of said order and proof of publication of same hereto attached and marked 'Exhibit L;' said proof being filed with the clerk of said board July 2, 1910.

"That on the 6th day of May, 1910, the board of supervisors passed an order, a copy of which is hereto attached and marked 'Exhibit H,' and which order is recorded in Minute Book 10, pp. 66-70, of the board of supervisors of said county by the terms of which it was ordered that bonds of said third supervisors' district in the sum of one hundred thousand dollars be issued for the purpose of constructing public highways in said district, and further ordering that all other matters pertaining to the manner and form of the bond and the series, and the denomination and date, and all other things pertaining thereto, were held up until a subsequent meeting of this board; said order being granted on the request and petition of H. B. Heard, D. W. Robbins, and Emmett Whitesides, commissioners, which request or petition is set out in said order of the board granted on said 6th day of May, and by the terms of which request or petition of said commissioners they asked for the sale of only fifty thousand dollars of said bonds at the present time, the balance to be sold from time to time as might be needed for the construction of said highways in said district.

"That on the 4th day of July, 1910, the commissioners before mentioned filed with the board of supervisors a petition asking that the entire issue of one hundred thousand dollars of said bonds be sold, instead of fifty thousand dollars, as before petitioned for; said petition being copied and exhibited herewith as 'Exhibit N.'

"That a copy of the petition of said commissioners for the issuance of said fifty thousand dollars bonds upon which the order of the board of supervisors was made

and granted on the 6th day of May, as above set out and shown as 'Exhibit H,' is hereto attached and marked 'Exhibit O.'

"That on the 5th day of July, 1910, the board of supervisors passed an order, being a final order or decree, which is recorded in Minute Book 10, pp. 119-122, a copy of which is hereto attached and marked 'Exhibit P,' by the terms of which the form and manner of said bonds, together with their numbers, dates, dates of maturity, and all matters pertaining to the details as to the issuance of said one hundred thousand dollars of bonds, was set out, together with the details of the coupons to be attached thereto; and further ordering that the clerk of the board be instructed to sell said bonds at either public or private sale on the 5th day of July, 1910, or as soon as practical thereafter, and ordering that said bonds could not be sold for less than par value and at as low rate of interest as could be obtained, not to exceed six per centum per annum.

"That on the———day of September, 1910, the board of supervisors of said county and state passed an order, a copy of which is hereto attached and marked 'Exhibit Q,' same being recorded in Minute Book, p. 216, of the minutes of the board of supervisors of said county, by the terms of which a levy of taxes was made, at the same time other levies of taxes were made, for county purposes, said levy amounting to two and one-half mills on the dollar, *ad valorem* tax on all property in the third supervisors' district of said county for the year 1910, for the purpose of raising funds to pay the interest coupons for said bond issue, and that the sheriff and tax collector of said county and state, O. T. Thrapp, had been furnished with a certified copy of said order and instructed to collect said tax, which he is now proceeding to do.

"Your complainant would respectfully show unto the court that said bonds have not been sold by said clerk

or by said board of supervisors, but that both said clerk and said board are negotiating for and attempting to make a sale of said bonds.

"Complainant would show unto the court that the bond issue contemplated by the board of supervisors herein is void, in that there is no warrant of law by which the board of supervisors should cause said bonds to be issued, and, if there is such warrant of law, that the proceedings had and done thereunder are irregular and do not follow the provisions of the law in such cases made and provided, as will be hereinafter set out as follows:

"No. 1. Chapter 149 of the Laws of Mississippi of 1910, being Senate Bill No. 66, was never legally enacted into a law in the state of Mississippi for reasons:

"(a) That said law was enacted at an extra session of the legislature at which time no matters could be considered except the question of raising of revenue for the state unless the subject-matter of such legislation was recommended to the legislature by the governor, which was not sufficiently recommended in substance and form as to permit the legislature to enact the law.

"(b) Because the bill covering this law was introduced in the senate of the legislature and there passed, and, on said bill reaching the house of representatives for consideration, said law was so radically amended that a substituted bill was framed and made which when passed and referred back to the senate, constituted a new bill and new legislation which should have been thereupon submitted to the judiciary and other committees as required by law, and which was never done, but said substitute was considered by the senate as an amendment, and was therefore never legally adopted.

"No. 2. That said Senate Bill No. 66 was enacted in violation of the Constitution of the United States and of the state of Mississippi, in that:

"(a) That the scheme of said legislation was to construct and maintain public roads through a set of com-

missioners to be appointed by the board of supervisors of each county, which thereby takes away from the board of supervisors of each county their power to have full jurisdiction over roads, ferries, and bridges as given by section 170 of article 6 of the Constitution of the state of Mississippi.

"(b)    That, if such jurisdiction is not taken away from the said board of supervisors in contravention of said section 170, then it permits said board of supervisors to delegate the authority for such construction and maintenance of said highways as cannot be delegated by a delegated body.

"(c)    That said law permits the laying out and establishing the right of way of such highways by said commissioners which cannot be done in any other way than that prescribed by law.

"No. 3.    That said law is in violation of Amendment 14, § 1, of the Constitution of the United States, and of section 14, art. 3, of the Constitution of the state of Mississippi, for the following reasons in the following manner:

"(a)    Because by section 1 of said bill it authorizes the construction and maintenance of one or more highways in each supervisors' district at the discretion of the board of supervisors or commissioners, or both, which might have been done with the funds derived from the issuance of bonds, yet limiting the amount of the issue of said bonds equal to ten per cent of the assessed value of the property in said district, thereby operating to give only a few the benefit of said highways so constructed, and compelling all in said district, whether benefited or not, to pay for same.

"(b)    Because said law does not provide on the filing of the petition containing the names of per centum of the qualified electors of such district, asking that such district be permitted to come under the provisions of this act, that notice of the filing of such petition should be

given and giving notice to the qualified electors and tax-payers, the opportunity for twenty per centum of the qualified electors of such district to petition against the issuance of the bonds.

"(c) Because said act does not provide for the kind of notice to be given for the holding of the election for and against the issuance of said bonds.

"(d) Because said act does not prescribe that any notice at all shall be given for the holding of said election as to whether or not bonds shall be issued.

"(e) Because the question as to whether or not the bonds shall be issued for said supervisors' district is left to an election at which only the qualified electors of said district may vote for or against the issuance of said bonds, and does not permit all taxpayers to partici-pate in said election, although they will be compelled under the law to pay for the construction of said roads through the tax levied upon them for that purpose.

"(f) Because said law provides that said election shall be conducted according to the provisions of the chapter of the Code of 1906 on Registrations and Elections as far as applicable. That, under said chapter of Registrations and Elections, no notice is required to be given for the holding of said election. No designated places are set forth for the posting of any notices to the qualified electors, or taxpayers could be given notice of the time and places where said election shall be held and of which they would have any opportunity of having any knowledge as to what questions they should vote upon.

"(g) Because under said law the qualified electors and taxpayers of said district have no way or method of knowing or determining for how much money the bonds of the district shall be issued; they have no op-portunity of expressing themselves as to the amount of said bonds and improvements, and how much they will be taxed for said purpose.

"(h)  Because the amount of said bonds to be issued is fixed by the commissioners, and not by the board of supervisors, or the qualified electors or taxpayers, and the legislature is without authority to delegate to any one except the board of supervisors the right to fix the amount that is to become an indebtedness of said district for the purpose of constructing a highway.

"(i)  Because said law provides that the board of supervisors, on recommendations of the commissioners, shall levy an annual tax on the taxable property in such district of not exceeding one mill on the dollar, which shall be used to supplement the general funds of the county in maintaining said road, or roads, culverts, and levees thereon. Whereas, under the law, the board of supervisors has the right, and it is their duty, to levy a general tax on the taxable property of the entire county for common county purposes, which should be used for the purpose of maintaining of culverts, bridges, and levees, which provisions are in conflict with each other and impose a double burden of taxation on the taxable property of such district coming under the provisions of said chapter, thereby making said taxation unequal and not uniform and depriving the taxpayers of said district of their rights under section 112 of the Constitution of the state of Mississippi as well as the provisions of the law above mentioned.

"(j)  Because section 7 of said act permits the extension of such roads constructed from the proceeds of the sale of bonds from the third district into other supervisors' districts of said county without making a proper charge or proper distribution of the burden of the tax on the taxpayers and property owners of such district or districts into which the roads might be extended.

"(k)  Because by section 8 of said act it is provided that any portion of any district or districts not coming under the provisions of this act may, by petition of twenty per centum of the qualified electors of such por-

tion, join in the petition provided for in section 2 of the act and ask to be incorporated into a road district in which shall be specifically and accurately defined the additional territory to be added to such district or districts, and in which law no provision is made for the giving of notice to those taxpayers and qualified electors in said territory to be added, who have not joined in said petition, and there is no right given of an appeal from the decision of the board as to the reasonableness of, and the necessity for, the creation and formation of such added territory into said special road district, and which leaves no opportunity for those opposing said boundary lines of such added territory to have such other boundary lines established for said district as might be right, just, and proper.

"(l) Because by section 10 of said act all matters with reference to the election held under the provisions of said law where other territory was to be added was left within the discretion of the board of supervisors, which gives the right of an arbitrary exercise of said power and of who shall participate in said election, not providing for the method or means by which same shall be carried out, and it is a matter in which the property rights of taxpayers owning property in said added territory have not the right or opportunity to protect themselves by trial in court of the arbitrary exercise of power by the board of supervisors.

"(m) Because each supervisors' district, and especially the third supervisors' district of Lee county, Mississippi, is subject to be changed at any time by the board of supervisors of the county with reference to the boundary lines of said supervisors' district, and, should said district be diminished, such territory so taken from it would be liable to a double burden of taxation by having been placed into some other supervisors' district, and, if increased, such territory included in said increase, while sharing the benefits of the roads of said district,

does not bear the burden of taxation equally with all other taxable property in said district.

"No. 4. That by the terms of the petition marked 'Exhibit A' the board of supervisors of Lee county was petitioned that an order be made that a part of the proceeds from the sale of said bonds might be used to extend and build roads beyond the limits of said supervisors' district into other districts of said county, and, while said petition was signed by more than four hundred of the qualified electors of said third supervisors' district, yet the board of supervisors wholly ignored such portion of said petition and failed to have any notice given at all with reference to same; that said petition was signed on the condition, as shown by said petition, that such roads should be so extended, yet no provisions have been made whatever for the making of such extensions, and your complainant would show that such irregularity is so material to the questions involved that said bonds, if issued, are void, and the taxpayers of said district should not be forced to pay the taxes necessary for the payment of the interest and principal of said bonds unless the terms of said law be complied with, and the qualified electors and taxpayers of said district have petitioned for and had an opportunity to vote upon this question.

"No. 5. That the proceedings toward the issuance in favor of said bonds are irregular and not carried out according to the law, in that the election held on April 29, 1910, was ordered to be held by the board of supervisors of said county and not the election commissioners.

"No. 6. That said bond issue and the proceedings thereon are irregular and void, in that section 4 of said act provides that bonds shall mature not later than twenty-five years from the date of their issuance, and shall be payable in annual installments after ten years; the amount to be paid each year to be fixed by the board of supervisors when the bonds are issued. The annual

installments after ten years, as fixed by the board of supervisors, are: One bond of five hundred dollars each year, or five hundred dollars each year after the tenth year, and ninety-three thousand dollars twenty-five years after the issue is made. Complainant would show that this proceeding is irregular, in that it is an effort to avoid the real spirit of the law and done in such manner as is not contemplated by the law, and that the true intent and purposes of the law was that the board of supervisors should provide for the maturing of some considerable part of said bonds after ten years.

"No. 7. That said proceedings are irregular and void, in that the limits and boundary lines and territory contained in said third supervisors' district is nowhere shown in the proceedings; but that the assessed value of the taxable property in said district is $2,632,849.

"No. 8. That said said proceedings are irregular and void, in that none of the decrees or orders by the board of supervisors show that the board of supervisors convened on the first Monday of each month in which the proceedings were taken up and the adjournment from day to day until such judgments or decrees are entered and passed during such term.

"No. 9. Complainant would show that all of the proceedings herein, as shown by the exhibits heretofore marked, are done and carried out in an attempt to construct and maintain roads in the Third supervisors' district of Lee county, Mississippi, under an act of the legislature herein referred to as Senate Bill No. 66, and that said act of the legislature violates other provisions of the Constitution of the United States and of the Constitution of the state of Mississippi and the proceedings hereon, and the effort to issue said bonds does not in other respects besides those above mentioned follow with regularity the provisions of said Senate Bill No. 66, and for these reasons said bond issue is irregular and void.

"Complainant herewith files, as Exhibits R and S to this bill, the Senate and House Journals of the 1910 session of the legislature of Mississippi. . . .

"The premises considered, your complainant prays that process issue to the said parties defendant herein, returnable at the regular term of the chancery court in Lee county, Mississippi, on the third Monday in October, 1910; and that on the final hearing of this cause the court grant to your complainant an injunction directed against the board of supervisors and the commissioners above mentioned, commanding them to do nothing further towards effecting a sale of said bonds, or in fact do anything further towards the issuance of same, than has already been done; and that Norbin Jones, clerk of the board of supervisors, be enjoined from further carrying out the instructions of said board towards making a sale of said bonds; and that O. T. Thrapp, sheriff and tax collector of this county, be enjoined from collecting any of the taxes levied by the board of supervisors for the purpose of paying the interest on these bonds or creating a sinking fund therefor.

"Complainant prays of the court that, if he has not prayed for the proper general relief, then he prays that the court will grant him such other special or general relief as the court may deem just and proper, and as in duty bound complainant will ever pray, etc., etc.
    [Signed]                          J. M. THOMAS.

The demurrer was in words and figures following:
J. M. Thomas
        v.
Board of Supervisors Lee County et al.

And now come the defendants by their counsel and demur to the original bill filed in this cause, and for cause thereof say:

I. Because there is no equity upon the face of the bill.

II. The allegations in said bill, under the objection No. 1, subdivisions (a) and (b), of the bill, are insufficient, because it is an attempt to go behind the enrolled bill and inquire into the legality of its enactment; the enrolled bill being the conclusive evidence of its enactment in accordance with the law.

III. The allegations of objection No. 2, as shown in the bill in subdivision (a), are insufficient because, by the provisions of chapter 149 of the Acts of 1910, it is not attempted to deprive the board of supervisors of their jurisdiction over roads, ferries, and bridges, as given them by section 170 of article 6 of the Constitution of the state of Mississippi. (2) The allegation of subdivision (b) of said No. 2 are insufficient because the provisions of said act do not permit the board of supervisors to delegate their authority over roads, ferries, and bridges to the commissioners named therein. (3) The allegations of subdivision (c) of said objection No. 2 are insufficient because the legislature has the authority to direct the manner of acquiring rights of way and the amount in which roads shall be laid out by the board of supervisors, and the legislature is not limited to any one manner.

IV. The allegations in objection No. 3, as shown in the bill, are insufficient for the following reasons: (1) As to subdivision (a) because the law does not require that the burdens of taxation should be equally distributed, and the legislature has the power to create a taxing district for the purpose of local and special improvements, regardless of the benefits accruing therefrom and to whom. (2) As to subdivision (b) because it is not necessary that notice of the filing of the petition should be given before the same is acted upon by the board of supervisors, since the act provides that notice of the intention to issue the bonds shall be given before the same are issued and the taxpayers are allowed to petition against the same and to vote upon their issuance. (3) As to

subdivision (c) because the law does not require any
notice to be given of an election to be held to determine
the question of the issuance of bonds, but, on the con-
trary, the legislature has authority, under the Constitu-
tion, to empower the board of supervisors to issue bonds
without providing for any election. (4) As to subdivis-
ion (d) because the legislature has authority, under the
Constitution, to authorize the ·board of supervisors to
issue bonds without holding any election thereon. (5)
As to subdivision (e) because it is not taking property
without .due process of law to levy a tax upon the prop-
erty of a taxpayer who is not a qualified elector, without
giving said taxpayer an opportunity to vote upon said
tax. (6) As to subdivision (f) because no notice of said
election was required as set out in subdivision 3 and 4
above. (7) As to subdivision (g) because the act of
1910 fixes the maximum amount of bonds which may be
issued, and this of itself is notice to the taxpayer of
the amount that may be issued, and no other notice is
required. ' (8) As to subdivision (h) because the said
act of 1910 gives the board of supervisors the final au-
thority with reference to the amount of bonds to be
issued. (9) As to subdivision (i) because the legisla-
ture has the right to create a taxing district and to pro-
vide for taxes to be used therein, and also because the
scheme provided in said act does not amount to double
taxation, and because those included within said district
receive special benefits therefrom. (10) As to subdivis-
ion (j) because under the provisions of said act the tax-
payers of said district, who are qualified electors, have
the right to vote as to whether or not they will assume
the burden of extending the roads into other districts at
their own expense. (11) As to subdivision (k) because
the legislature has the right to prescribe the manner in
which any territory shall be added to a taxing district,
and because this has not been attempted to be done in
the instant case, and, if the act was unconstitutional in

this particular, it would not affect the validity of this bond issue, nor would it affect the remainder of the act. (12) As to subdivision (1) because the legislature has the right to empower the board of supervisors to hold an election as to the issuance of bonds in any manner that they see proper. (13) As to subdivision (m) because a change in the boundary line of the third supervisors' district would not affect the validity of these bonds and would not change the location of the roads built with the proceeds of said bonds. (14) Because the levying of this tax to pay for these bonds is not taking property without due process of law.

"V. The allegations of objection No. 4, as shown in the bill, are insufficient: (1) Because the question as to whether the roads would be extended into other districts was not an issue in said election. (2) Because the provisions of section 7 of said act of 1910, requiring the board of supervisors to submit the question of extending the roads into other districts, is not mandatory, and the said board had the right to refuse to submit the same. (3) Because this objection could only be raised by way of a bill to enjoin the commissioners and the board of supervisors from spending the money to extend the roads in other districts.

"VI. The allegations of the bill as set out by objection No. 5 in this case are insufficient because it was the duty of the board of supervisors to order the election, and not the duty of the election commissioners.

"VII. The allegations of the bill as shown by objection No. 6 in said bill are insufficient because the bonds, issued in this case were made payable in annual installments after ten years, as the said act of 1910 directs, and the same does not require payment in equal annual installments.

"VIII. The allegations of the bill as shown in objection No. 7 in the bill are insufficient because it was not

necessary to show the limits and boundaries of the third supervisors' district in said proceedings.

"IX.   The allegations of the bill as shown in objection No. 8 in the bill are insufficient because the orders and decrees of the board of supervisors show upon their face that they were granted on a day of the regular terms of said court, and the court takes judicial notice of the time of holding said regular terms and additions thereto; all said orders and decrees bear date of the time of their rendition.

"X.   The allegations of the bill as shown by objection No. 9 in the bill are insufficient because the same does not set out what provisions of the Constitution of the United States and the state of Mississippi are violated by said act, nor does it show wherein the proceedings in this cause are irregular and contrary to the provision of said act of 1910."

(Signed)                CLAYTON, MITCHELL & CLAYTON,
                            Solicitors for defendants.

[With usual certificate, etc.]

*J. M. Thomas,* appellant, in *propia persona.*

This case was instituted for the purpose of testing the validity of the bond issue in question that same might be sanctioned if valid in all respects by a decision of the supreme court of the state. The law being a new departure in such matters in the state a decision touching its validity would be of great public good.

The objections urged to the validity of the bond issue present all questions that can possibly be raised thereto of which appellant can conceive, and he respectfully presents the objections as set forth in detail in the bill of complaint and asks that the court for the future guidance of all concerned in proceedings in such matters as they come up in the state hereafter under the act of 1910, Laws 1910, ch. 149.

*Clayton, Mitchell & Clayton,* for appellees.

*Answer to the first objection.* This objection is untenable because it seeks to go behind the enrolled bill and consult the journals of the house and the senate. This court has decided very often that this cannot be done. The reason given is that somebody must decide as to the legality of the passage of the bill and that when the bill has been signed by the governor and the other officers duly pointed out that this is conclusive evidence of the legality of its passage. *Green* v. *Weller,* 32 Miss. 685, 690; *Ex parte Wren,* 63 Miss. 529; *Nugent* v. *Jackson,* 72 Miss. 1040; *Henry* v. *State,* 87 Miss. 157.

*Answer to the second objection.* Subdivision (a) The second objection is that by this act an attempt is made to take away from the board of supervisors their "full jurisdiction over roads," etc.

However, the act shows upon its face that the road commissioners are under the control of the board. Moreover it has been decided by this court that the legislature may prescribe the manner in which this jurisdiction may be exercised. *Beard* v. *Arrighi,* 53 Miss. 668; *Paxton* v. *Baum,* 59 Miss. 531; *Deal* v. *Donnelly,* 60 Miss. 662; *Monroe County* v. *Strong,* 78 Miss. 565.

Subdivision (b) of the second count is untenable because the act shows that it is not the purpose that the board should delegate its authority to the commissioners.

Subdivision (c) of said objection cannot stand because the legislature had the right to direct how rights of way for roads may be acquired and is not confined to any one method. Neither do secs. 4400 and 4401 exclude the common law method of acquiring a right of way by gift, etc. *Kinnare* v. *Gregory,* 55 Miss. 612.

*Answer to the third objection.* The objection raised by the third assignment of error attacks the constitutionality of the act on the ground that it is an attempt to deprive the citizen of his property without "due pro-

cess of law.'' This question we think has been settled against this contention, by our own court and the weight of authority elsewhere.

Due process of law with reference to taxation requires only an orderly procedure, adapted to the nature of the case, enforce and protect his rights; and the statute fixing the time, place and manner of equalizing the assessment as made by the tax assessor and levying all state and county taxes, is all the notice required to be given. The taxpayer has the right to appeal from any assessment made against his property. This is the general law in this state and property taken by virtue of an assessment of taxes made in this manner is according to due process of law.

The act under which the bonds were issued provides that the board of supervisors shall, at the time fixed by law, for levying other taxes, levy taxes to pay the interest, etc., on the bonds. This gives notice to the taxpayer that the levy will be made at that time and no other and he has the right to appear and contest same and appeal.

In this cause the taxpayer had more notice than that required under due process law. All taxpayers were made parties to the proceeding in this cause by the giving of the notice required by said act of the intention of the board to issue bonds and they were then parties to this suit to all intents and purposes and chargeable with notice of everything done by the board thereafter in pursuance of said cause. They were charged with knowledge of the fact that upon the petition of twenty per cent of the qualified electors that an election would be ordered and they had the right to vote in said election.

They could have appealed from the order ratifying the election or any other order in this cause. This very proceeding shows that they were not denied due process of law, because if such were the fact this suit would have no standing in the court and have been dismissed with-

out inquiry as to its merits. The taxpayer could, as was sought to be done in this case, enjoin the collection of the taxes and various other things and therefore the requirements of the law—that he shall be heard before the assessment is made final—is complied with.

"Due process of law," according to the courts, is a question to be determined upon the facts of each particular case and the authorities cited below will support our contention that the act in question complies with the requirements of the Constitution in this respect. 8 Cyc. 1130, 1131.

The legislature has the same power with reference to taxing for local, public improvements as for levying the general tax for the support of the government. *Williams* v. *Cammack,* 27 Miss. 223; *Alcorn* v. *Hamer,* 38 Miss. 752; 8 Cyc. 1110.

The best discussion of this matter by the Supreme Court of the United States will be found in *Hager* v. *Reclamation District,* 111 U. S. 701; *McMillen* v. *Anderson,* 95 U. S. 37, 24 L. Ed. 335.

"Foot Assessment" cases and the one at bar yet those cases throw some light upon this one and we refer the court to them. *Wilzinski* v. *Greenville,* 85 Miss. 393; *French* v. *Asphalt Co.,* 181 U. S. 324, 45 L. Ed. 879.

*Answer to the fourth objection.* This objection is that since the original petition to the board in this case, duly signed, etc., asked that part of the proceeds of the sale of said bonds be used "to extend the roads into other districts," and that thereupon the board granted said petition, but refused thereafter to submit this question "For the issuance of bonds" and "Against the issuance of bonds," that said bond issue is invalid. This position is based upon the proposition that it was mandatory upon the board to submit said question and that their failure so to do is a fatal defect. It is not contended that the commissioners are intending to extend the roads into

other districts but on the contrary that they have no such intention.

In answer to this we say:

1st. The question as to whether or not the roads would be extended into other directions was not the point in issue.

2nd. This objection could only be raised by a bill to enjoin the commissioner from extending the road into other districts. *Fulton* v. *Town of Pontotoc,* 79 Miss. 516.

3rd. The provisions of section 7 of chapter 149 of the Acts of 1910 are not mandatory upon the board. In order to discuss this we will consider:

(a) By section 170 of the Constitution, the board of supervisors are given "full jurisdiction over roads, ferries and bridges, to be exercised in accordance with such regulations as the legislature may prescribe." Under this provision this court has held that the legislature has power to pass regulations as to the manner of the exercise of this jurisdiction provided that said regulations do not amount to a deprivation of power. Now then we say that "full jurisdiction" is not consistent with a mandatory construction of this act. We say that the board cannot be compelled to act in any given way. In other words their discretion is subject to no overruling power save the Constitution. This court has decided oftentimes that the courts have no power to interfere with the board of supervisors as to any matter upon which they had the right to exercise their discretion. It follows we think beyond all controversy, that where the Constitution has confided to the board discretion with reference to any matter that the legislature cannot interfere with them in the exercise thereof.

To the board of supervisors is confided a determinative, judicial discretion by the Constitution, to-wit: "Full jurisdiction over roads." Let the court understand—we say that as to the manner in which this power shall be

exercised, the legislature may direct. But as to whether or not it will take any action (not the manner in which it shall be taken) in a certain given case, the legislature cannot dictate. For an illustration, would the legislature have the power to enact that upon the petition of ten per centum of those residing along any public road it should be the duty of the board of supervisors to close same to travel? This is an extreme case but it puts the case squarely before the court. This would of course take away from the board the exercise of their discretion in the matter. Yet in the case before the court it is provided that upon a petition of twenty per centum of the qualified electors of a district the board should extend roads into other districts at the expense of the whole district from which the petition originated and that upon the wishes of only twenty per cent of the voters. (This is of course when there is no election.) To avoid such an absurdity we must construe "shall" as used in said section 7 to read "may" and thus leave to the board their constitutional right of discretion.

Another judgment in our favor is that all throughout this act all the decisions of the commissioners are dependent upon the board. If the board has not the authority to decide when and where roads shall be constructed, why make the commissioners subservient to them?

For a construction of the word "shall" see Words and Phrases, vol. 7, title "Shall"; *Cason* v. *Cason,* 31 Miss. 578, 592; *Light Co.* v. *Boston,* 10 L. R. A. 497.

"Shall" is to be construed as mandatory only when some imperative right demands that it shall be so construed. The authorities above cited support this contention. In this case no imperative right demanded that the taxpayers should add an additional burden upon themselves but on the contrary it was better for them that such question should not be submitted.

(b) Upon a view of the entire act we contend that it was never intended that the board should be compelled

to submit the question of extending roads into other districts.

First, the title to the act and the first section of it say that the board of supervisors is ''authorized and empowered,'' not directed to construct roads, etc. See sec. 1.

Second, in section 5, line 31, the adoption of the plans, etc., of the engineer employed by the commissioners, is made mandatory upon the board of supervisors if ''shall'' is to be the criterion, for it says ''shall make an order adopting such survey,'' when adopted by the commissioners. The absurdity of this is patent yet if ''shall'' is mandatory at one place it surely is at another.

Third, the principal thing contemplated by section 7 is the expenditure of the funds, while section 3 provides for the issuance of the bonds. Suppose there had been no election in this case, only a petition by twenty per cent of the qualified electors, with no counter petition, is to be contended, as we said before that the board would be compelled to expend part of the proceeds of the sale of the bonds in extending roads into other districts, and has the board no discretion in the matter? Then if the roads must be so extended, then how much of the total bond shall be thus extended?

Fourth, the last clause of section 7 reads as follows:

''And if a majority of electors . . . shall vote in the affirmative or if there be no election, then the said road commissioners shall, with the approval of the board of supervisors *have the power to extend said roads into other districts* and pay for same out of the proceeds of the sale of said bonds.''

The emphasis is ours but we wish this clause emphasized, because in our opinion it settled the matter. It does not compel either the commissioners or the board to extend the roads into other districts but says they ''shall have the power'' to extend the roads into other districts.

Then if it is not mandatory upon the board to so extend the roads into other districts after the electors have voted in the affirmative is it not untenable to hold that it was mandatory to have submitted the question? Why compel the board to submit the question to the voters and yet not compel the board to execute the expressed wishes of the voters. We will not impute such folly to the legislators.

Then if it was not mandatory upon the board to submit the question it follows that this cannot affect the validity of the bond issue. The board had the right to refuse to submit that question to the voters. The board did submit the question of whether or not bonds would be issued to build roads in the third supervisors' district and the electors of said district voted in the affirmative and the bonds are to be issued for that purpose alone. Then who may complain?

(c) Even if it were mandatory upon the board to have submitted this question nevertheless their failure so to do does not invalidate this bond issue. The essentials of a valid bond issue remains, to-wit:

1. Power to issue the bonds.

2. Practical compliance with the law. *Aberdeen* v. *Sykes*, 59 Miss. 236; *Pontotoc* v. *Fulton*, 79 Miss. 511; *Kemp* v. *Hazlehurst*, 80 Miss. 443.

In the Kemp case as in this there was substantial compliance with the law and that was held sufficient.

(d) This is a collateral attack upon the proceedings of the board of supervisors and cannot be sustained. Any taxpayer or other person interested in the question of the issuance of the bonds should have appealed from the decision or order of the board of supervisors directing the issuance of the bonds.

Conceding for the sake of argument that the board in this case was exercising a special and limited jurisdiction nevertheless the jurisdictional facts exist and the very evidence of those facts is set forth in the orders,

etc., thus more than complying with the requirements laid down in *Hinton* v. *Perry County*, 84 Miss. 536, 546, and *Simpson County* v. *Buckley*, 85 Miss. 728.

What were the jurisdictional facts in this case?

First, a petition of twenty per cent of the qualified electors. The record shows beyond controversy that this was filed, going so far as to show the actual number of those signing.

Second. A notice of the intention to issue bonds. This was published as required by the act.

Third, a counter petition signed by twenty per cent of the qualified electors, which is also on file.

Fourth, an order for an election, which was duly given.

Fifth, an election duly held, certified, etc., which was also done, and complying with the requirement that a majority should vote for the issuance of bonds and the additional requirement that a certain form of ballot should be used, which was carried out to the letter.

What jurisdictional fact is lacking? And is not the appellant and all other persons absolutely barred from attacking this proceeding in this collateral manner by reason of the failure to appeal the case?

Let the court keep clearly in view of the fact that in order to issue bonds (without any reference to the expenditure of the proceeds of said bonds) the above five requisites must exist in order to confer jurisdiction upon the board. Once shown to exist and no fraud or corruption being charged as in the Simpson county case the action of the board is not subject to a collateral attack. The board has the power to issue bonds under certain conditions and those conditions in our opinion have been complied with to the very letter and only by an appeal can their action be attacked. The ballots submitted to the electors "For the issuance of bonds" and "Against the issuance of bonds." The election carried "for the issuance of bonds" and regardless of all other matters with reference to the expenditure of the proceeds the

issue itself is valid, the board had jurisdiction and no appeal was taken.

We will say frankly to the court that unless, however, the failure to appeal would cut off all other persons for all time, we would not insist upon this feature of the case because this bond issue, being the first of its kind in the state, is a matter of too great importance to go off otherwise than upon the merits. We do not believe that unless an appeal was duly taken from this decision of the board and to the proper court that no subsequent collateral attack could be made or we should never have set up this defense.

*Answer to the fifth objection.* This objection is that the election in this case was ordered by the board of supervisors and not by the election commissioners. The board had the right and it was their duty to have ordered this election. The act does not say by whom the election shall be ordered but in general bond issues the board orders the election. See sec. 333, Code of 1906.

Section 3419 of the Code of 1906 does not say that the election shall be ordered by the mayor and board of aldermen but in the Kemp case (80 Miss. 443) it was so ordered and that bond issue was held valid. We cannot conceive of who else beside the board should have ordered this election.

*Answer to the sixth ground.* This objection is that the bonds were not made to mature in equal annual installments. Suffice it to say that the law (sec. 4) does not so require. But this same objection was advanced in the case of *Kemp* v. *Hazlehurst,* 80 Miss. 443, and decided in favor of our contention.

*Answer to the seventh objection.* It was not necessary to show the limits of the third supervisors' district. *Alcorn* v. *Hamer,* 38 Miss. 752.

*Answer to the eighth objection.* All the orders of the board of supervisors show upon their face that they were granted upon a day of regular terms and the court takes

judicial notice of the time of holding their courts.    16 Cyc. 912.

MAYES, C. J., delivered the opinion of the court.

This case is before the court on bill and demurrer. The pleadings and exhibits so thoroughly state the case that we direct the reporter to set forth the pleadings when the case is reported. The suit is a friendly one, instituted for the purpose of testing the validity of chapter 149 of the Acts of 1910, p. 140, and for the further purpose of testing the validity of the proceedings of the board of supervisors in attempting to issue bonds under the authority of the act and for the purposes named therein. We may say in the beginning that the act itself is drawn with exceeding care, and, while numerous causes are assigned for having it declared invalid, none of them have any merit. No clause or section of any Constitution is violated by any provision of the act. The questions raised by which it is sought to avoid the act have all been settled time and again by this court, and all that could be gained by a discussion of them here would be to simply repeat the declarations of this court on the same subject, which could not be of any profit. The care which characterized the preparation of the act also characterizes the proceedings of the board in all particulars save one, and this does not in any way affect the validity of the proceedings, or the bonds issued thereunder. Of all the questions propounded to the court, we think only two deserve any discussion, and to these we shall confine ourselves. In the first place, the petitioners, proceeding under section 2 and section 7 of the act, pray not only for the construction of the highway in district 3, the petitioning district, but also prayed that the proceeds of the bonds be used to extend the roads beyond the district and into others. The board received and approved this petition with its double aspect and gave notice of their intention to issue bonds for the dual

purpose prayed for in the petition. Subsequent to this, and after a protest was filed against the bonds, and it became necessary to order an election, the board ignored that feature of the petition which prayed for the extension as provided for in section 7 of the act, and, in ordering the election and giving notice thereof, submitted only the proposition allowed by section 2 of the act; that is, that the bonds should be issued and the proceeds used for the purpose of constructing and maintaining the highway in the third district alone and not for extension. In the face of the petition praying for both, but without any objection from any one, the electors were notified to vote, and did vote on the one proposition only.

Appellant contends that the petition containing the dual proposition was the thing which conferred jurisdiction on the board to act, and that the board could only act in accordance with its full prayer. It is the further contention that, when the board ignored the extension feature of the petition and proceeded to issue bonds for one purpose only, it lost all jurisdiction to act in any way, and that the proceedings were void. We think this contention is without merit. To begin with, the bonds are issued for the purpose authorized by the act —in fact, the main purpose sought to be accomplished by it. The extension is not the main, but a secondary, right secured by the act. The petition conferred jurisdiction on the board to act in accordance with the powers conferred by the act. After the petition was filed and the notice was published of intention to issue the bonds, all persons in the district were parties to the proceeding and are concluded by the proceeding of the board to which they did not object. At a public meeting, and without objection from any one, the board abandoned the extension feature of the petition, gave notice to this effect by failing to include in it the order and notice of election, and all the district is conclusively presumed to have acquiesced in the action of the board in this particular, since no one objected. No voter was misled in any way.

Only one proposition was submitted to be voted on, and only one was voted on. Because the board abandoned the secondary purpose of the petition, with the presumed acquiescence of the entire district, its jurisdiction to submit to the electors the main purpose of the act, complete in itself and not dependent in any way on the abandoned feature, did not in any way affect the jurisdiction. If the record showed that the qualified electors of the district, both for and against the issuance of the bonds, had appeared before the board after the original petition was filed, and notice of the intention to issue the bonds published, and protest filed, and asked the board to omit the extension feature of the original petition, it would hardly be contended that this would cause the board to lose jurisdiction in such way as to prevent a submission of the main purpose. What was done was in effect just this.

The only other contention we desire to notice is the contention of appellant that section 5 is void because it violates section 170 of the Constitution. The contention is that by virtue of section 170 the board of supervisors are given full jurisdiction over roads, ferries, and bridges; whereas, section 5 of the act provides for the appointment of three commissioners to construct and supervise the highways. There is a twofold answer to this contention. In the first place, while section 170 confers full jurisdiction, etc., it further provides that this jurisdiction shall be exercised ''in accordance with such regulations as the legislature may prescribe.'' This feature of the act is a regulation prescribed by the legislature and well within the power conferred on the legislature. In the second place, by the terms of the act full jurisdiction is still retained in the board, since the commissioner's acts and powers are subject to their approval in all respects.

The decree of the chancellor sustaining the demurrer is affirmed, and bill dismissed.                    *Affirmed.*

ANDERSON, J., took no part in the decision of the case.