LUTHER BOOKOUT, *et al, v.* BOARD OF SUPERVISORS ITAWAMBA CO.

[60 South. 568.]

1. HIGHWAYS. *Road districts. Petitions. Laws 1910, chapter 149. Board of supervisors.*

The orders of a board of supervisors acting under the Laws 1910, chapter 149, by which it attempted to assume powers not conferred on it by a petition, to-wit, the power to issue bonds for the purpose of building roads, outside of the supervisors' district named in the petition, where either void or voidable. If void they were nullities and could have been disregarded. If voidable they could have been set aside in a proper proceeding instituted for that purpose.

2. SAME.

Such orders are void or valid in their entirety and being void so far as they authorize the issuance of bonds for the purpose of building roads outside of the district named in the petition are void as a whole.

3. HIGHWAYS. *Road district. Petitions.*

Where there are two petitions before the board of supervisors for the establishment of a road district at the same time, either of which the board had the right to act on first, an affirmative action upon one of them deprived the board of any power to act upon the other, and the granting of the relief prayed for in one of these petitions excluded the board from then granting the relief prayed for in the other.

APPEAL from the circuit court of Itawamba county.

HON. J. H. MITCHELL, Judge.

Petition by Luther Bookout and others for mandamus against the board of supervisors of Itawamba county and petition by the road commissioners for *certiorari* against the same dfendants.

Both writs being denied, petitioners appeal.

At the May term, 1911, the board of supervisors of Itawamba county received a petition from more than twenty per cent of the qualified electors of the fifth super-

visor's district, asking to come under the provisions of chapter 149 of the Laws of 1910 for the purpose of issuing bonds for the construction of good roads.    The petition, as presented, asked that "said district (5th) be permitted to issue bonds in the sum of thirty-two thousand dollars for the purposes provided in said act, and that notice of the filing of this petition and of the proposed issuance of bonds be published as required by law."

At the August, 1911, meeting of the board, an order was made reciting that said petition had been presented, signed by one hundred and thirty of the five hundred and thirty-eight qualified electors in the fifth supervisor's district, and that the prayer of that petition should be granted, providing, among other things, "that it is the purpose of the board to issue the bonds of such fifth supervisor's district, as provided in said act of the legislature, above set forth as therein provided, at its next regular meeting, and it further appearing that the qualified electors signing said petition have petitioned that in addition to the right to use the proceeds of the sale of said bonds asked to be issued on the roads to be built in said district, that the proceeds of the sale of the said bonds may be used to extend and build roads beyond the limits of such district, and that a tax be levied on such fifth supervisor's district to pay such bonds and maintain such roads.    It is further ordered, adjudged, and decreed that such additional prayer of said petition, be and the same is hereby granted."    The order further provides that "all of said bonds to be issued and sold, and the proceeds to be used, as in said act provided, and that, in addition to using the proceeds of said bonds for the purpose of building and maintaining roads in such fifth supervisor's district, such part as the commissioners shall, with the approval of the board of supervisors, see fit, to be used and expended to extend said roads into other districts."    At the September, 1911, term, the board passed an order reciting the prior proceedings, and, further, that there

was no petition on file against the issuance of bonds of said district, and proceeded then to appoint Bookout and others road commissioners to carry out the provisions of the act. At the October term, 1911, certain qualified electors of the second and third supervisor's districts sought to have territory in said two districts annexed to the fifth supervisor's district to make one road district out of the whole territory. The board asked the opinion of the attorney-general as to whether they had the right to annex territory in the second and third districts to the fifth district, after the fifth district had been incorporated into a road district, and received a reply from the attorney-general holding in the negative. No further steps were taken to join the portions of the second and third districts to the fifth. Thereafter the road commissioners of the fifth district employed an engineer to lay out certain roads in that district, and prepare plans and specifications for their construction. At the May term, 1912, a petition was presented to the board signed by three hundred and forty-five out of five hundred and thirty-eight qualified electors of the fifth district, praying that all orders and resolutions theretofore passed by which it had been sought to incorporate the fifth supervisor's district into a road district be revoked and set aside, and the original petition dismissed. The board passed an order granting the prayer of this petition, and revoked and set aside the former order incorporating the fifth supervisor's district as a separate road district under the law of 1910. The road commissioners appealed to the circuit court, but failed to have signed a bill of exceptions embodying their objections. At the July term, 1912, the board, treating all proceedings incorporating the fifth district as void, received a petition signed by seven hundred and eighty-nine out of one thousand, one hundred and twenty one qualified electors in the territory composed of the fifth district and portions of the second and third districts for the purpose of incorporating this territory into a road district under said act of 1910, as amended by chapter 145, Acts 1912.

To this petition the road commissioners of the fifth district filed exceptions, and on the hearing of the board entered an order granting the prayer of the petition, and ordering publication of notice of the purpose of the board to issue bonds of the proposed road district. A counter petition being thereafter presented, the board, at the August meeting, orderd an election which carried in favor of the issuance of bonds, and at the September meeting an order declaring the result of the election and appointing road commissioners for the new road district was entered. Bookout and others appeared and excepted to this order of the board, and prepared a bill of exceptions embodying their objections, and appealed to the circuit court, where, on trial, the order of the board was affirmed.

It was contended that the fifth supervisor's district had therefore been legally incorporated into a road district alone and could not afterwards be incorporated into a road district with parts of the second and third supervisors' districts. Bookout and others then filed in the circuit court a petition for a mandamus against the board of supervisors to compel the board to treat the fifth supervisor's district as a road district, and issue bonds of said district alone. On the hearing of this proceeding a judgment was entered in favor of the board, and Bookout and others appeal. This is one of the cases before the court No. 16,230. The road commissioners also sued out a writ of *certiorari* in the circuit court to bring before that court the proceedings of the board of supervisors by which the orders and resolutions incorporating the said fifth supervisor's district alone into a road district were set aside, held for naught, and dismissed because of the failure to take a bill of exceptions as required by statute. This case was also tried in the circuit court, and resulted in a judgment for the board of supervisors, and the petitioners appeal, which is the other case now pending before this court No. 16,325.

*Wiley H. Clifton,* attorney for appellant.

*Anderson & Long,* attorneys for appellee.

No brief of counsel on either side found in the record.

Smith, J., delivered the opinion of the court.

All of the orders passed by appellee after the filing of the petition in May, 1911, by which it attempted to assume power not conferred on it by the petition, to wit, the power to issue bonds for the purpose of building roads outside of the fifth supervisor's district, were either void or voidable. If void, they were nullities, and could have been disregarded. If voidable, they could have been set aside in a proper proceeding instituted for that purpose. This being true, appellee had full power to repeal these orders, irrespective of what the power of boards of supervisors ordinarily is with reference to rescinding or repealing former orders passed by them, for the reason that in repealing these orders appellee simply did voluntarily that which, in effect, it could have been forced to do against its will. It was not necessary for appellee to wait for these orders to be set aside. It very properly acted in the matter of its own accord.

It is admitted by appellant that these orders were void in so far as they assumed power not conferred upon the board by the petition, but it is claimed that they are valid in all other respects. These orders of appellee are void or valid in their entirety. Had the order granting the prayer of the petition advised the people of the district that under the petition filed with it appellee could only use the money to be derived from the sale of bonds in building roads within the district, it may have been that a counter petition would have been filed, and an election demanded. The people of the district may have been willing for the bonds to be issued, provided the money

was to be spent in accordance with the published intention of the board, but not if the money could not be so spent. These views are not in conflict with *Thomas* v. *Lee County* 98 Miss. 232, 53 South. 585.

It is unnecessary for us to decide whether or not the board had the power, in repealing these orders, to dismiss the petition upon which they were based, instead of then proceeding to act in accordance therewith. If the board was without power to dismiss this petition, it was, of course, still pending, but, before any further action was taken thereon, another petition was filed praying for the issuance of bonds and the creation of a different road district. There were therefore then two petitions pending before the board at the same time, either of which the board had the right to act upon first. An affirmative action under one then deprived the board of any power to act upon the other, and the granting of the relief prayed for in one of these petitions excluded the board from then granting the relief prayed for in the other.    *Affirmed.*