HAYS *et al.* v. LAFAYETTE COUNTY *et al.*

[91 South.  196.  No. 22301.]

1. HIGHWAYS.   *Where petitions for creation of road districts, each including part of same territory, are pending, the board may select one on which to act first.*

Where two or more petitions for the creation of road districts,

each including a part of the same territory, are pending before a board of supervisors at the same time, the board may select the one of which it will act first.

2. HIGHWAYS. *Petitioners may sign separate sheets to be attached to petition for district.*

It is immaterial whether the names of the qualified electors to a petition for the establishing of a road district appear on the same sheet of paper on which the petition is written or on separate sheets attached thereto, provided they were placed on the separate sheets after they were, or for the purpose of being, attached to the petition; and the facts relative thereto are for the determination of the board of supervisors.

3. HIGHWAYS. *Order of board of supervisors held to show sufficiency of petition for creation of district.*

Assuming that the provision of section 2, chapter 176, Laws of 1914, requiring a petition for the creation of a road district to contain the names of twenty per cent. of the qualified electors thereof means that the petition must be signed by twenty per cent. of the qualified voters, or recited in an order of a board of supervisors that such petition contains the names of twenty per cent. of the qualified electors of the district will be held to mean that the petition was signed by twenty per cent. of the qualified electors thereof.

4. HIGHWAYS. *Notice of bond issue election designating district by name given it in order creating district held sufficient.*

When a road district has been regularly created under chapter 176, Laws of 1914, and designated by a name in the order creating it, a reference to it thereafter by name in a notice of an election to be held for the purpose of determining whether its bonds shall be issued is sufficient notice to the electors of the territory to be affected by the issuance of the bonds.

ON SUGGESTION OF ERROR.

5. HIGHWAYS. *Notice by board of supervisors of bond issue held not void for failure to specify purpose and amount.*

A notice to the qualified electors of a road district published by the board of supervisors of its purpose to issue the road bonds of such district under chapter 176, Laws of 1914, which notice recites that it was the purpose of the board to issue bonds under the said statute, specifically pointing out the statute therein, is not void because it fails to indicate to the qualified electors of the district the purpose for which the bonds are to be issued, nor because it fails to state the amount of bonds proposed to

be issued; the information carried by such notice as to what
law the bonds are to be issued under being sufficient to inform
the electors of the character of bonds proposed to be issued, as
well as the maximum amount to be issued, which is named in
said statute; it not being possible under said statute to inform
the electors in such notice of the exact amount of bonds pro-
posed to be issued, because that is a question which under the
statute could only be determined by the road commissioners,
with the approval of the board of supervisors, after the publica-
tion of said notice and the organization of said road district.

APPEAL from circuit court of Lafayette county.

HON. W. A. ROANE, Judge.

Proceedings to create districts. From the judgment of
the circuit court affirming an order of the board of super-
visors of Lafayette county creating district and appointing
road commissioners therefor, W. J. Hays and others appeal.
Affirmed.

*W. P. Shinault,* for appellant.

Certainly, the board was compelled to take action first
upon the Sanders petition, which was prior and pending,
and failing that, no action could be taken, legally upon the
Gallegly, or subsequent petition. See record of Sanders
petition, page 1.

If Sanders and others had right under laws to file the
petition for road district, or Gallegly and others the same,
then the Sanders proceeding being first, should have been
disposed of one way or the other before any action was
taken upon that of the Gallegly petition. Otherwise, chaos
reigns. The entire record fails to show any action upon
the Sanders petition (a consideration of the record tran-
script will so disclose). The authority of the board, in
such cases, is statutory, if at all; and the statute provides,
chapter 176, Laws of 1914, when the petition was filed,
section 2, just the action to be taken by the board, none
taken, whatsoever. Then, it is insisted, this proceeding of
Gallegly et al. must fail.

128 Miss.—35

## II.

Upon the second assignment, the face of the original petition clearly evidences the fact, that the typewritten form of petition was not in fact signed by any one, but that the two sheets of common scratch paper was signed previously, and later braded or pinned on to same. Can the board by an order recite an unconscious or legal fraud against the rights of appellants, even if unnoticed by it at the time? Otherwise, any paper to be filed in court of original jurisdiction, can be put in, by having parties sign in blank, then later another interested, maybe, change the original paper, substitute another, and thus affect the rights of others not parties thereto in any sense, his property be taxed maybe ruinously, sold for non-payment of taxes, and so on. Certainly, on the face of the Gallegly petition, which will be presented to the court, no faith can be extended to it.

Surely, had this petition of Gallegly and others been presented to any court, inquiry would have been first made to ascertain why it should come clothed in the garments it appears none had here. Yet those interested and the board desire to tax, maybe take away from, the appellants, their lands. A halt, somewhere, should occur.

The McAuley petition, filed May 2, 1921, nearly two years after the filing of the Sanders original petition, and that of the Gallegly petition (and this proceeding now before the court, and that passed upon by the board, is that of the Gallegly petition, filed after the Sanders petition) was for the creation of an entire new district under laws of chapter 176 and amendments 1914, and the board entered an order purporting that said district had heretofore been created, etc. See record page, and allowing it to come under only chapter 277, Laws of 1920, and directing by said order that an election be held in said district on June 4, 1921, to ascertain, what, whether the qualified electors favored the issuance of sixty thousand dollars in bonds, etc. No notice published otherwise.

It is considered that chapter 277, Laws of 1920, being merely amendatory chapter 176, Laws of 1914, that upon

filing the petition of A. H. McAuley, et al., it became incumbent upon the board to issue the notice required under section 2, chapter 176, Laws of 1914. Otherwise, property right under due process of law becomes a shadow.

Take section 2, chapter 277, Laws 1920, a non-resident of the actual land, although, as in this instance, who are residents of Panola county, are residents of Mississippi and natives, can have no voice in, or be heard in the matter of, taxation of their lands. No provision of notice to such citizens and taxpayers, but under that law, they must take whatever the wind may blow. No opportunity to be heard, appear, or do anything. Simply the "goats." ·

We submit, that this cause should be reversed and dismissed.

*John W. Kyle,* for appellants.

The petition of J. L. Saunders et al. was filed two months prior to the date of the filing of the Gallegly petition upon which the first action of the board of supervisors was taken. The Saunders petition, at the time of the filing of the Gallegly petition, was and at all times since, has been, a pending petition, and has never been disposed of in any legal manner. Section 2 of chapter 176, of the Laws of 1914, under which the Saunders petition was filed, is mandatory in its terms, and when a petition is filed purporting to be signed by the requisite number of qualified electors of certain territory therein described, the duty rests upon the board of supervisors to hear the parties, and if it appear that the required number of signers has been obtained, to publish notice of the petition and the intention of the board of supervisors to incorporate the territory therein described into a separate road district and issue bonds therefor. Upon the filing of their petition the petitioners are entitled to have the board proceed in the matter in the manner defined by the statute. Action in this respect could be compelled by mandamus. Yet the rights of petitioners would count for very little, if at a later meet-

ing and before any action had been taken on their petition, other parties should be allowed to file other petitions asking for the creation of other road districts to be composed of a part of the territory proposed to be included in the road district asked for in the first petition, and the board of supervisors should be permitted to arbitrarily ignore the first petition and proceed to destroy its purpose by including a large part of the territory described in it in a road district organized under proceedings instituted after the first petition had been filed and before any hearing had been had upon it.

The so-called Gallegly petition filed on the 18th day of August, 1919, asking for the organization of a separate road district and the issuance of two hundred dollars worth of road district bonds, shows upon its face that it was signed by no one, and is of course ineffective for all purposes. Some original writing on yellow scratch paper may have been presented to and signed by the men whose names appear on the so-called Gallegly petition, and this being found insufficient to constitute the basis of judicial proceedings, the type-written petition in form substantially complying with the requirements of the statute was later substituted and the list of names found on another instrument of paper inartfully attached to it. Section 1601 of the Code of 1906 (section 1368 of Hemingway's Code) provides that: "In all cases where the signature of any person is required by law, it shall always be the proper handwriting of such person, or, in case he be unable to write, his proper mark." A paper which shows upon its face that it is not what it pretends to be cannot be made the basis of judicial action. Clothed in garments of such a fraudulent character, it cannot lay claim to the legal attribute of genuineness nor be purged of its inherent vice by means of an invalid order of the board of supervisors.

Even if it were contended that the substitution of names was done by the authority of the persons who signed the unknown instrument on paper, from which the names were taken, the board would have been in error in deciding that

it would regard the names of persons not signed to the petition itself by the parties themselves, but by their authority.  As stated by CAMPBELL, C. J., in the case of *Ferguson* v. *Board of Supervisors of Monroe County,* 71 Miss. 524, 14 So. 81, section 1520, Code 1892, (section 1601, Code of 1906, *supra*), provides that in all cases where the signature of any person is required by law, it shall always be the proper handwriting of such person, or in the case he be unable to write, his proper mark.  There is no escape from this positive and plain requirement, and it must be duly observed.  *Camp Creek Drainage District* v. *Johnson et al.,* 71 So. 320.

The order of the board of supervisors entered at the September term, 1919, directing that notice be published of the filing of the Gallegly petition and of the intention of the board to issue and sell the bonds of a road district to be created as prayed for in that petition; the order of the board of supervisors made at the October term 1919, attempting to create and organize the Beat Three Road District, "as a body politic and corporate," and appointing road commissioners; therefore, the order of the board of supervisors made at the June term, 1920, upon petition of E. H. Shaw and others, calling for an election to be held in said road district, to ascertain whether or not the bonds of the said district should be issued and sold in an amount not to exceed ten per cent of the assessed value of the district; the order of the board of supervisors made at the July term, 1920 approving the report of the election commissioners on the said election, and the order of the board of supervisors made at the August term, 1920, authorizing and providing for the issuance and sale of sixty thousand dollars of the bonds of the said district, are each and all affected with the fatal infirmity inherent in the whole proceeding and are null and void for the reason that each and all of them are based upon the original so-called Gallegly petition, which having been signed by no one, as shown on its face, was incapable of imparting life to any judicial proceedings based upon it.

On the subject of the jurisdiction of courts, as to subject-matter, the rule is laid down in 7 R. C. L., page 10: "Under chapter 277 of the Laws of 1920, no road district can be created until the proper preliminary petition has been filed and an election held in the territory embraced in the petition to determine whether or not a majority of the qualified electors residing in that territory will vote to authorize the board of supervisors to issue bonds for constructing improved highways in the specified area, the bonds to be issued as the bonds of a road district to be formed out of the territory embraced in the petition filed with the board of supervisors.

Not until this election has been held and the majority of the votes cast in it have been cast in favor of the proposition can the separate road district be created, and take its place as a legal subdivision of the county, entitled to be designated as a separate *quasi*-municipal organization. Due notice of that election must be given, and as this court stated in the case of *Rhodes* v. *Robinson, Tax-Collector,* 68 So. 145, 146, that notice, must be a notice in fact.

The notice given by the county election commissioners to the qualified electors of the Beat Three road district, of Lafayette county, of the intention of the board of supervisors to issue the bonds of the Beat Three road district, and the statement printed on the official ballot used in the election held pursuant to that notice failed to designate the territory which would be affected by the proposed bond issue and failed to indicate who would be entitled to vote in the election. The taxpayers and qualified electors, whose interests were to be affected, were entitled to have publication of these matters made, in order that full discussion might be had during the three weeks which the law required should intervene before the holding of the election, and in order that the vote cast might represent the intelligent opinion and mature judgment of those in whom the statute had vested the power of deciding. The notice to the qualified electors of the Beat Three road district of Lafayette county, was no notice at all, for the

reason that no such road district existed, and the statement on the ballot used in the election that the board of supervisors proposed to issue the bonds of the Beat Three Road District, in the sum of sixty thousand dollars for the purpose of constructing and maintaining one or more highways in the said road district, and asking for a yea and nay vote on the proposition, was illusive, indefinite and meaningless.

This is a direct attack upon those proceedings and we respectfully ask that the judgment of the circuit court be reversed and a proper order be entered here vacating the orders and resolutions of the board of supervisors from which this appeal is taken.

*L. C. Andrews,* for appellee.

Prior to the Laws of 1918, when a petition was presented to the board of supervisors, signed by the required number of qualified electors of the proposed district, to create the territory described therein into a separate road district under chapter 176 of the Laws of 1914, notice must be given by the board of its intention to issue the bonds of the proposed district, and if within the necessary time no counter-petition was filed against the proposed issuance of the bonds, no election was necessary, but if there was a counter-petition then it became the duty of the board to order an election to determine the matter. Since the passage of the Laws of 1918, no bonds can be issued without the same being first authorized by a majority vote of those voting at an election called for that purpose.

Chapter 277, page 393 of the Laws of Mississippi, 1920, amends chapter 176 of the Laws of 1914, so as to provide the manner in which districts may be created and bonds issued. Under this chapter no bonds can be issued unless authorized by a majority vote of those voting at an election called to determine whether or not they shall be issued.

Chapter 207, page 282 of the Laws of 1920, provides that before issuing said bonds, the board of supervisors shall,

by resolution, spread upon its minutes, declare its intention of issuing said bonds fixing the maximum amount thereof, and the purpose for which they are to be issued and fix in said resolution the date upon which an election shall be held in said county, etc. The act goes on and provides for the calling of an election and what the ballot shall contain.

While it is true that the board did give notice of its intention to issue the bonds of the proposed district, and while there was no counter-petition filed protesting against the issuance of bonds, yet they did call an election to submit the question to the voters and the election resulted in favor of the issuance of the bonds of the district, but it readily occurs to any one that this election was invalid, because the resolution of the board did not fix the maximum amount of the bonds to be issued or declare the purpose for which they were to be issued.

In acting on the McAuley petition, which was merely supplemental and corrective to and of the Gallegly petition, the board declared that said territory has been heretofore organized into a separate district by virtue of the law therein referred to under the name of Beat Three road district of Lafayette county, Mississippi, and that said district has been heretofore perfected and completed, except that a question has arisen as to the amount of the bonds to be issued and sold for the purpose prayed for in the petition. The order declares that such creation and organization of said territory is hereby ratified, confirmed and perfected. The election is called according to chapter 207 of Laws of 1920. The resolution fixes the maximum amount of bonds to be issued and declares the purpose for which they are issued. This election resulted again in favor of the issuance of the bonds of the district.

The board found as a fact that the Gallegly petition was signed—by the requisite number of persons. It also rendered a similar decision on the McAuley petition. One of the contentions of appellants is that inasmuch as the Gallegly petition was signed, or rather that the signatures of the signers are on a piece of scratch paper and attached to

the petition, there was no valid petition for the board to act upon.

The findings of a board imports verity, and are not to be lightly set aside. They found that the Gallegly petition was signed by twenty per cent of the qualified electors of the proposed district, and their decision upon this matter is sought to be set aside simply because the signatures of the signers appear on scratch paper attached to the type-written petition. A board does not have to recite the evidence in its order when it finds things to be facts.

It is worth while to call the attention of the court to this fact; that not one of the parties signing this petition has excepted to the order of the board.

POINT OF LAW. Duplicate petitions may be circulated, and when signed by requisite number of persons, the names of the signers may be detached from all the petitions and attached to one of the duplicates and in this form presented to the board and when so presented constitutes a valid petition and the board is warranted in taking action thereon and granting the relief prayed for. *Collins* v. *Barrier et al.*, 8 So. 164.

There may be two or three petitions pending before the board for the creation of a road district, any one of which the board may take action on, and when they have so acted they are precluded from acting upon the others. *Bookout* v. *Itawamba County,* 103 Miss. 413, 60 So. 568.

As to the operation and effect of the orders and resolutions of a board of supervisors, it will be presumed that they are valid, and that the board acquired jurisdiction. Until the contrary is shown, it will be presumed that its proceedings were regular and valid. Ordinarily a decision of a county board in the exercise of its judicial discretion is conclusive and will not be controlled or reviewed, unless there is clear abuse of such discretion, or unless there is evidence of collusion or fraud. 15 C. J., pages 471, 472.

So, there being nothing in this record to show that the recitals in the orders of the board are false, and that there

was any collusion between the board and the petitioners or any person, or that they were guilty of fraud in the passage thereof, we take it that their orders and resolutions are valid and binding. And treating the Gallegly and McAuley petitions as one and the same thing, we cannot assume or say wherein the action of the board on said petitions is in any manner invalid.

Chapter 176 of the Laws 1914, and all amendments thereto, does not require the signature of the persons to the petition to be in their own handwriting as did the local-option statutes.

We, therefore, respectfully contend that the action of the lower court should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment of the court below affirming an order of the board of supervisors of Lafayette county that certain designated territory be permitted to come within the provisions of chapter 277, Laws of 1920, and appointing road commissioners therefor. On the 4th day of September, 1919, the board of supervisors of Lafayette county passed an order adjudging that a petition filed with it for the issuance of the bonds of the territory designated therein for road purposes under the provisions of chapter 176, Laws of 1914, "contains more than twenty per cent. of the qualified electors of said proposed road district" and ordered that notice be given of the filing of the petition and of the intention of the board to issue the bonds therein prayed for.

At the October, 1919, term, no objection to the issuance of the bonds having been made, the board entered an order:

"That said lands so described hereinbefore be, and the same is hereby, created and organized into a separate road district under and by virtue of chapter 176, Laws of 1914 of Mississippi, under the style and name of 'Beat Three road district of Lafayette county, Miss.,' as a body politic and corporate, and the bonds of said district are to be issued as herein after ordered."

Afterwards an election was held in order to determine whether or not the bonds of the district should be issued, but, because of a defect therein, not material here to be set forth, no bonds were issued thereunder.  At the May term, 1921, a petition describing the same territory as that described in the petition hereinbefore referred to was filed with the board of supervisors praying that the territory therein described be permitted to come under the provisions of chapter 176, Laws of 1914, as amended by chapter 277, Laws of 1920, and that bonds of the district be issued and sold for road purposes.  The order made by the board on this petition recites that:

"The board having found that said petition is signed by more than twenty per cent. of the qualified electors of the territory described herein, and that said territory has been heretofore organized into a separate district by virtue of the law therein referred to, under the name of Beat Three road district of Lafayette county, Miss., and that said organization has been heretofore perfected and completed, except that a question having arisen as to the amount of the bonds to be issued, and sold for the purpose prayed for in the petition:

"Now, therefore, be it resolved by the board of supervisors of Lafayette county, Miss.: That the prayer of the above petition be, and the same is hereby, granted, and the said territory is hereby authorized to come under the provisions of the said chapter 277 of the Laws of 1920, and such creation and organization of said territory is hereby ratified, confirmed, and perfected, and it is the intention of this board to issue and sell the bonds of said district in a maximum amount of not exceeding sixty thousand dollars for the purpose of constructing and maintaining one or more highways in said road district for the convenience of the traveling public, and the said intention to issue and sell bonds is hereby ordered submitted to the qualified electors of said district for ratification or rejection at an election hereby ordered held in said district on the 4th day of June, 1921, and the election commissioners shall give the

proper notice, and the election shall be held as authorized by law."

The notice published by the election commissioners for the holding of this election was as follows: "Special Election in the Beat Three road district of Lafayette county, Mississippi, Saturday, June 4, 1921. (College Hill Precinct.) (Slates Precinct.) To submit to the qualified electors of said district the proposal of the board of supervisors of said county to issue and sell the bonds of said district in the maximum sum of not exceeding sixty thousand dollars for the purpose of constructing and maintaining one or more highways in said road district.

"For the issuance of the bonds ————.

"Against the issuance of the bonds ————."

It is stated in the brief of counsel for the appellants, but does not appear from the record, that the territory embraced within the proposed road district is in, but not coextensive with, supervisors' district No. 3.

When the report of the commissioners came on to be heard by the board in June, 1921, an order was entered reciting:

That a majority of the qualified electors of the district had voted in favor of the issuance of the bonds in the maximum sum of sixty thousand dollars, and "that the above-mentioned Beat Three road district be permitted to come under the provisions of law as prayed for in the petition filed in said cause, and that M. Price, J. J. Dillard, and D. W. Gallegly be, and they are hereby, appointed road commissioners for said district for a term of four years as authorized by chapter 176, Laws of 1914, and amendments thereto."

Before this last order was entered the appellees filed written objections to the issuance of the bonds and to the validity of the orders entered and to be entered. When the first petition herein referred to was filed with the board of supervisors, there was pending with it another petition praying that a large territory, included within which is that described in the petition on which the first order herein re-

ferred to was made, be permitted to come under the provisions of chapter 176, Laws of 1914.

As we understand the brief of counsel for the appellant, the reasons therein assigned for reversing the judgment of the court below are: (a) The board of supervisors was without jurisdiction to enter the order at its September, 1919, term creating "Beat Three road district of Lafayette county," for the reason that another and prior petition for the creation of a road district which would include the lands embraced within Beat Three road district was then pending and undisposed of; (b) the electors must all sign the same petition, or, if they do not all sign the same petition, those signed must be identical, and the fact that the names of the electors here appear on sheets of paper differing in quality from that on which the petition is written indicates that the sheets containing them were pinned to the petition after the names were placed thereon, and may have been detached from other and different petitions, and to hold that they thereby became a part of the petition would open the door to fraud and nullify the requirements of the statute; (c) the order creating the road district recites that the petition praying therefor "contains more than twenty per cent. of the qualified electors," and not that it was signed by more than twenty per cent. thereof, as the statute requires; (d) the notice given the electors of the intention of the board of supervisors to issue the bonds of Beat Three road district does not comply with the requirement of the statute relative thereto in that it does not describe the territory composing the district.

1.   Where two or more petitions for the creation of road districts, each including a part of the same territory, are pending before a board of supervisors at the same time, the board may select the one on which it will act first. *Bookout* v. *Board of Supervisors,* 103 Miss. 413, 60 So. 568.

2.   It is immaterial whether the names of the qualified electors to a petition for the establishing of a road district appear on the same sheet of paper on which the petition is written, or on separate sheets attached thereto, provided

they were placed on the separate sheets after they were, or for the purpose of being, attached to the petition; and the facts relative thereto are for the determination of the board of supervisors.

3. Section 2, chapter 176, Laws of 1914, under which the district here in question was created, authorizes a board of supervisors to create a road district upon the presentation to it "of a petition containing the names of twenty per cent. of the qualified electors," etc.; and the order entered by the board of supervisors of Lafayette county on the petition here in question recites that it "contains more than twenty per cent. of the qualified electors," etc. Conceding for the purpose of the argument, and as contended by counsel for the appellant, that the requirement of the statute that the petition shall contain the names of more than twenty per cent. of the qualified electors means that it shall contain the signatures of more than twenty per cent. of such electors, then we must also hold that, when the board of supervisors used the words of the statute, they meant to give to them the statutory meaning. In other words, if the words "containing the names" in the statute mean "signed by," certainly the words "contains the names" in the order of the board of supervisors based on the statute must mean the same thing. Beat Three road district was therefore regularly created by the order of the board of supervisors entered at its October term, 1919.

4. Beat Three road district being a regularly created district, the reference to it by name in the notice to the qualified electors thereof of the election to be held for the issuance of its bonds was a sufficient notice to the electors of the territory to be affected by the proposed bond issue.

Affirmed.

## ON SUGGESTION OF ERROR.

ANDERSON, J. The appellants suggest that the court erred in the opinion handed down in this case in holding that "Beat Three road district" was legally organized. It

is contended that the resolutions of the board of supervisors organizing the district are void, because the notice published by the board of its purpose to issue the bonds provided for by section 2, chapter 145, Laws of 1912, failed to state the purpose for which the bonds were to be issued, and the amount of bonds the board proposed to issue. The notice in question is in this language:

"Notice.

"The State of Mississippi, County of Lafayette.

"Whereas, a petition signed by more than twenty per cent. of the qualified electors of the proposed Beat Three road district has been filed with the board of supervisors, asking that the following described lands in said county and state be organized into a separate road district, and permitted to come under the provisions of chapter 176 of the laws of Mississippi of 1914, to wit:

"Sections 19, 20, 29, 30, 31, and 32, township 6, range 3 west; sections 5, 6, 7, 8, 17, 18, 19, 30, and west half of section 31, township 7, range 3 west; sections 25, 36, and the east half of section 35, township 6, range 4 west; sections 1, 2, 3, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, and south half of section 8, all in township 7, range 4 west; sections 1, 2, 3, 10, 11, 16, and northeast quarter of section 12, township 8, range 4 west; also sections 13, 24, 25, 26, 27, 34, 35, and 36, in township 7, range 5 west. All the above lands lying and being in Lafayette county, Mississippi.

"Now, therefore, notice is hereby given that the board of supervisors, at its regular meeting in October, 1919, will issue the bonds of said district, as prayed for in said petition, unless a petition objecting to the issuance of the bonds and the organization of the said district, signed by twenty per cent. of the qualified electors of the above described territory, is filed with said board."

The appellants argue that *Rhodes* v. *Robinson,* 109 Miss. 114, 67 So. 899, is decisive of this question in their favor. The notice involved in that case was in this language:

"Notice of Bond Issue.

"To the Qualified Electors of Beat No. 4:

"Notice is hereby given that the board of supervisors of said Rankin county proposes, at its next regular session, beginning on the first Monday in November, 1913, to issue the six per cent. bonds of said Beat No. 4, the said bonds to mature in twenty-five years and payable as follows: Five five hundred dollars bonds on the 15th day of November, 1923, and five five hundred dollar bonds on the 15th of November of each successive year, until seventy of said bonds are paid, and ten of said bonds on November 15, 1938."

The court held that the notice in that case was void, because it failed to indicate to the electors the purpose for which the bonds were to be issued, what kind of bonds were intended, whether school bonds, road bonds, or drainage bonds, and the court said that the notice was defective also because it failed to state under what law the board proposed to issue the bonds.

It will be noted that by the notice in question in the present case the electors of the district were informed that it was sought to organize the district and issue bonds under chapter 176, Laws of 1914. This constituted a very material difference between the notice here and the notice in the Rhodes Case. It is true that this notice did not inform the electors of the purpose for which the bonds were to be isued, nor the amount proposed to be issued. But with such a notice, specifying the statute under which it was proposed to issue the bonds, any qualified elector in the district, by consulting the statute therein referred to, would have unerringly ascertained the purpose for which the bonds were sought to be issued, and furthermore would have found by consulting the statute (section 3, chapter 176, Laws of 1914) that the maximum amount of bonds which could be issued under the statute was ten per cent. of the assessed property of the. district, and that the exact amount of bonds to be issued, as provided in said section, could not be fixed until after the election had either carried, or an elec-

tion became unnecessary under the statute, and that then the statute authorized that to be done alone by the road commissioners to be appointed, subject to the approval of the board of supervisors.   In other words, any elector, by pursuing the inquiry suggested by the published notice, would have ascertained, by any sort of diligence, the limit of the amount of bonds which might be issued, the purpose for which they could be issued, and that the exact amount to be issued could be fixed alone by the road commissioners, with the approval of the board, after the election, or after an election became unnecessary.   The notice of the proposal to issue bonds could not, under the statute, have informed the electors of the amount of bonds which was proposed to be issued, because that fact could be determined alone after the election, or after it became unnecessary to have an election.

We think the suggestion of error is without merit.

*Overruled.*