W. H. PERKINS ET AL. v. W. H. HENDERSON.

PETITION FOR LIQUOR LICENSE. *Code* 1880, § 1103. *Withdrawal of name from counter-petition.*

Under § 1103, code 1880, which provides for petitions and counter-petitions for license to sell intoxicating liquors, and directs that any name found on both petitions shall be counted against granting the license, one, who has signed the petition and also the counter-petition, may, by his written request to the proper authorities, withdraw his name from the counter-petition at any time before final action by them, and thus leave his name to be counted for the granting of license.

FROM the circuit court of Monroe county.

HON. LOCK E. HOUSTON, Judge.

The record contains an agreed statement of facts, from which it appears that appellee, Henderson, presented his petition to the mayor and selectmen of the city of Aberdeen, praying for license to retail vinous and spirituous liquors in that city for one year. The petition was in legal form, and was duly published. It is conceded that 299 legal voters constituted a majority of those residing in said city, and the petition as filed contained the names of 333 qualified voters, being 34 in excess of the required number. A counter-petition was filed, containing among others the names of 42 of those who had signed the petition. But before it was filed or presented to the board, 9 of the 42 filed with the board their written direction and request that their names be stricken from the counter-petition and counted on the petition in favor of license. The counter-petitioners appeared before the board at its hearing of the petition and objected to the written directions being considered, but the objection was overruled.

The board of selectmen granted the license, and the case having been brought by *certiorari* to the circuit court, the action of the board in granting the license was affirmed. This appeal is prosecuted in behalf of the counter-petitioners.

*Sykes & Richardson*, for appellants.

On the agreed transcript a single question is presented for consideration, that is, whether one having signed the counter-petition

can afterwards file a written direction to the board of mayor and selectmen to have his name stricken therefrom at the hearing, and in this way recall his action in signing the counter-petition and be counted in favor of selling whiskey? If the written directions or petitions for withdrawal of names from the counter-petition are to have the effect contended for, the scheme of the statute will be defeated. The petitioner for license can get every doubtful voter who signs his petition at the same time to give a written direction to the board to take his name from the counter-petition. This paper can be concealed until the board meets, and then without notice to the opposite side be produced. Thus, counter-petitioners are powerless to meet such "counter-counter petitions."

The purpose of the law was to provide a simple method for getting at the sentiment of a community, and two instruments of writing are made the means of doing this, one, a petition alleging certain things in reference to the applicant, and the other asking that he be not granted license. The two together constitute a statutory proceeding, and no private paper should be considered. Voters cannot come off and on *ad infinitum*. We think this view is shown to be correct by the case of *Romberger* v. *Board, etc.*, 63 Miss. 218.

*E. H. Bristow*, for appellee.

Under section 1103, code 1880, a counter-petition is a mere private paper of no binding force, and is the property of no one, and confers no vested rights until it is filed or presented. It is analogous to a will which may be revoked, and to a deed which is inoperative until delivered, and to a bail-bond from which the surety can erase his name before it is completed and delivered. It has a still closer analogy to a vote. A man may join a politica' club, sign a pledge, prepare his ticket and become one of a "block of five," and yet the ticket is not a vote until deposited in the ballot-box. A free American citizen does not absolutely enslave himself by signing in a moment of enthusiasm and without consideration a mere private paper. There is a *locus penitentiæ*. Surely one who signs a counter-petition is not like that "profane person Esau," who sold his birthright, and when he would have inherited the

blessing could not, and " could find no place of repentance, though he sought it carefully with tears."

The individual who circulates a counter-petition has no estate or right in it, and is not bound to file it.  *Romberger* v. *Board, etc.*, 63 Miss. 218. It seems that the vital point in that case was that the names were erased after the counter-petition had been filed and presented.  A counter-petition can be filed at any time before the board acts on the application.  *Rogers* v. *Hahn*, 63 Miss. 578. Before the petition is filed the signer can actually erase his name. After that the signer of a counter-petition who has changed his mind may withdraw his name from the counter-petition by a petition to that effect, and this revives his vote in favor of the application.

CAMPBELL, C. J., delivered the opinion of the court.

The applicant for license to retail vinous and spirituous liquors must present and have filed a petition signed by a majority of the resident legal voters in the supervisor's district, or the city or town, as the case may be, which shall lay over one month for consideration and the reception of " counter-petitions," and be published. Code, § 1103.

" Any name found on both petitions shall be counted against the granting of the license." Ib.  The object of this is to give opportunity for those opposed to granting license to present reasons against it, and for those who signed the petition for license to revoke or annul their signatures to it, and then be counted in opposition to it.  Does one who signs a petition for license, and then signs a counter-petition, irrevocably fix his position beyond change or recall as against the granting of the license, or may he recall this act, by taking his name off of the counter-petition, or by signifying his wish by writing preferring his request to the board, and when may he do this, if he can do it at all?  The statute prohibits the granting of license, unless a majority of the legal voters favor it, as shown by their written petitions.  Assuming that some persons might sign both petitions, it declares that any name found on both shall be counted against.  This does not mean that one who, having signed a petition for a license, afterwards signs

a counter-petition, shall be bound by it, so as not to be able to repent of it, and recall his signature in any way. If his name be cut out or obliterated, so as not to be discoverable, it would not be found on the petition, certainly ; and, if he prefers a request in writing to the board not to regard his signature, it should be held that his name is not found on the counter-petition, in the sense of the statute, the object of which is to ascertain the will of the majority of legal voters—the voice of the people—manifested by petition, as a substitute for ballots cast into a box. We can perceive no reason for denying the right of the board, which has to consider the application, to regard any written petition on the subject which may be presented before action by it. Unless it appears affirmatively in the form of petition, as prescribed by law, at the time of granting license that a majority of legal voters favor it, no license can be lawfully granted. It must be allowed to the board to consider all the petitions before it, and, if any name is found on petitions for and petitions against license, it must be determined by the board on which petition it is found. In such a case it would be found literally on both—it might be on several on each side—and, if the letter of the law is to prevail, it must be counted against the granting of license. But that is not what the law means. The legislature did not anticipate and provide for such vacillation by legal voters as that would exhibit. It did assume that some might sign a petition for license, and afterwards sign a counter-petition, and prescribed a rule for disposing of that, but the idea of the provision is that the voter has the right to change his petition and signify his wish in the same form by petition, as at first indicated ; and as the later expression of his will as a voter by signing the counter-petition showed him against granting license he should be counted against it ; or even, if the counter-petition was signed first, that he who took both sides should be counted against granting license. It was necessary to have a rule on the subject, and the legislature chose to provide as above stated, but its purpose was to do no more than to make a rule for the contingency likely to occur, and it was not to conclusively and irrevocably fix the position of the voter by the act of signing a

counter-petition. That would preclude its being taken off by the party, or his showing that he signed by mistake or deception. The sense in which a name is "found on both petitions," as used by the statute, is that a legal voter has stated by petition that he is for and he is against granting the license, and in this dilemma, not knowing where to put him, the law fixes his position against; but where the voter has plainly signified by written petition his will not to be regarded as a signer of the counter-petition, it cannot be said that his name is found on both petitions. It is there, it is true, but he has withdrawn it by an act as solemn as that by which it was affixed, and, if he is so changeable as to undo that, in like solemn form, he may, for the intent of the law is that license shall not be granted, unless a majority of legal voters affirmatively declare for it in the mode prescribed; and as the law permits the voter to undo his signature to a petition for license, by counter-petition, and there is no express denial of the right to recall or undo a signing of a counter-petition, it should not be denied by the courts. If the legislature had intended to make signing a counter-petition irrevocable, it would have said so. If the same name is found on a petition for license, and on a counter-petition, and nothing else appears, the statute furnishes the rule for counting this name; but, if it be made to appear to the board by written petition, that the voter disavows and disowns his signature, and declares for a particular one of several, this declaration should prevail. That is a case not provided for by statute—a contingency not contemplated, and the rule for it must be deduced from the spirit of the statute and general principles, which, in our opinion, conduct to the conclusion announced.

The applicant for license must start with a majority of legal voters, and cannot add to his petition afterwards, but signers to his petition may turn against it, and withdraw from it, if they persist in that attitude to the end, of which the board must judge.

*Affirmed.*