WILLIAM H. MACK *et al.*

*v.*

THE POLECAT DRAINAGE DISTRICT.

*Opinion filed June 23, 1905.*

1. DRAINAGE—*notice of filing of petition does not give jurisdiction.* The giving of notice of the filing of a petition to organize a drainage district, as required by section 3 of the Levee act, does not give the county court general jurisdiction of the case, the notice being but a preliminary step to the investigation to be made by the court under section 5, including the question whether the petition was signed by the requisite number of property owners.

2. SAME—*petitioners may withdraw signatures before final action on petition.* Upon the hearing had under section 5 of the Levee act, persons who have signed the petition have a right to withdraw their signatures before the final action of the court determining the sufficiency of the petition.

3. SAME—*when order creating district is defective.* An order creating a drainage district is defective which fails to state that the district "is duly established as provided by law," there being no words of similar import used.

4. SAME—*organization of district may be questioned on appeal from order confirming assessment roll.* Under the Levee act the final order of the court, as provided by section 25, is the confirmation of the assessment roll, and hence, on appeal or error to review that order, all previous orders, including those relating to the organization of the district, may be reviewed and objections thereto considered.

5. APPEALS AND ERRORS—*when finding that petition was sufficiently signed is not conclusive.* A finding by the county court that a drainage petition was legally and sufficiently signed is not conclusive, on appeal, that there was a sufficient number of signers exclusive of those to whom the court had erroneously refused permission to withdraw their signatures just prior to making its finding.

6. JUDGMENTS AND DECREES—*when judgment cannot be entered nunc pro tunc.* A judgment *nunc pro tunc* cannot be entered at a subsequent term unless the judgment was in fact rendered at the previous term but was not entered through some fault, neglect or oversight, which fact can only be proved by some memorial paper or minute in the case at the previous term.

7. SAME—*when order nunc pro tunc cannot be entered pending appeal.* An order *nunc pro tunc* as of a previous term, supplying

an essential element to an order made at that term, cannot be entered at a subsequent term, where the omission was called to the attention of the court at the previous term, the objection overruled, exception taken and an appeal allowed, which was pending when the *nunc pro tunc* order was entered.

WRIT OF ERROR to the County Court of Coles county; the Hon. T. N. COFER, Judge, presiding.

On January 8, 1903, a petition was filed in the county court of Coles county for the organization of the Polecat drainage district. The petition was set for hearing February 5, 1903, and the notices were given as required by law. On the date of the hearing five of the signers of the petition filed their written statement withdrawing their signatures from the petition, retracting the prayer thereof and certifying that they were no longer willing to have their names appear thereon. The court refused to recognize their withdrawal, and entered an order finding that the petition contained the signatures of a majority of the owners of land within the proposed district who were of lawful age and who represented more than one-third in area of the lands proposed to be included in the district, appointed commissioners and established the boundaries of the district. On April 16, 1903, the commissioners presented their preliminary report, which was confirmed by the court, and the order of confirmation recites that the work proposed would be useful for agricultural and sanitary purposes; that the persons having signed the petition were of lawful age and a majority of the land owners who represented one-third in area of the land to be affected by the proposed work, exclusive of infant owners, and authorized the commissioners to make an assessment of benefits, or damages and benefits, in lieu of a jury, and that all proceedings required of a jury be observed by the commissioners. The commissioners filed an assessment roll, in which the property of the plaintiffs in error was assessed, in separate tracts, various amounts for benefits, and later an amended assessment roll was filed, which recited that the

commissioners had amended the original assessment roll by showing thereon the amount of damages allowed to the respective land owners in eminent domain proceedings instituted by the commissioners for the purpose of assessing such damages, and that this assessment as made by the jury had been adopted. The record of the eminent domain proceedings was attached to the assessment roll and made a part thereof.

Objections were filed to the confirmation of the roll on the grounds that there was no such district as the Polecat drainage district; that there never was filed a petition signed by a majority of the adult land owners within the proposed district; that the record failed to show the filing of any such petition or any jurisdiction in the court to appoint commissioners; that the commissioners could not assess benefits and damages until the value of the land taken was ascertained by a jury, as provided by law. The court overruled the objections and confirmed the roll, and a writ of error has been prosecuted to reverse that judgment.

H. A. Neal, F. K. Dunn, J. E. Dyas, and R. G. Hammond, for plaintiffs in error.

A. C. Anderson, and Edward C. & James W. Craig, Jr., for defendant in error.

Mr. Justice Wilkin delivered the opinion of the court:

The first error assigned is the refusal of the court to permit the five petitioners to withdraw their names. This district was organized under the act of May 29, 1879, as found in chapter 42 of Hurd's Statutes of 1897. Upon the filing of the petition the clerk of the county court is required, under section 3, to give notice to the parties interested as to when and in what court the petition was filed, the starting point, route, termini and general description of the proposed work, the boundaries and name of the proposed district, and at what term of court the petition will be heard. Section 5 pro-

vides that on the day set for the hearing, all parties who may be damaged or benefited may appear and contest the interest or utility of the proposed work or any part thereof, and it shall be the duty of the court to hear and determine whether or not the petition contains the signatures of a majority of the owners of the land within the proposed district who are of lawful age and who represent one-third in area of the lands proposed to be affected by the work. In case the court shall find in favor of the petition and that the requirements of the statute have been complied with, it shall appoint three competent persons as commissioners, but in case the court shall find against the petition it shall be dismissed.

The case of *Littell* v. *Board of Supervisors of Vermilion County,* 198 Ill. 205, on this point is quite similar to the one at bar. A petition was filed on March 11, 1901, with the county board of Vermilion county, signed by two hundred and twenty-seven legal voters, for the organization of a new township. At its March meeting the board ordered the notices to be posted and published as required by the statute, and fixed the June session as the time for final hearing. On June 10, 1901, seventy-seven of the voters who had signed the original petition asked that their names be stricken therefrom. On June 12, 1901, fifty of the seventy-seven voters repudiated their action and asked that their names remain on the original petition. At the September session of the county board the prayer of the petition was denied. A writ of *mandamus* was sought, and the question for consideration was as to the right of these petitioners to withdraw their names. On page 208 of that opinion we said: "Our examination of the decisions cited by counsel on either side from other courts on analogous statutes has led us to the conclusion that the act of signing such petitions is not an irrevocable act, and that it may be revoked at any time before the jurisdiction of the body authorized to act has been determined by it." On page 209 we further said: "In this case the board of supervisors did not determine the sufficiency

of the petition and the requisite notice until June 10, 1901. According to the allegations of the answer, which are admitted by the demurrer, prior to that determination the twenty-seven petitioners withdrew their names from the petition. No final action was taken by the board until the following September, at which time, under the foregoing authorities, a petition signed by three-fourths of the legal voters of the proposed new town was not before it, and therefore it properly denied the prayer. If all the petitioners had sought to dismiss the petition at any time before final action by the county board it would scarcely be claimed that they would not have had the right to do so. Each petitioner acts on his individual responsibility, and if he should change his mind on the question whether a new township would better serve the convenience of the inhabitants residing therein, or if he should be induced to sign it under a misapprehension or through undue influence, he ought to have the right to correct his mistake, if he does so before the rights of others have attached by the final action on the part of the board."

The decision above quoted is conclusive of the facts in this case. While it is true that petition was filed before a board of supervisors and this petition was filed in a court of record, yet both were filed under similar statutes and the same rule should apply. The original petition in this case was filed on January 8, 1903, and under section 3 of the statute the notice was given as required by law and the final hearing set for February 5. The notice as given was a preliminary step to the investigation to be made by the court under section 5. Under this latter section it was the privilege of all persons damaged or benefited to appear and contest the utility of the proposed work, and it was the duty of the court to ascertain whether the petition had been signed by the requisite number of property owners. Until these facts had all been determined the court did not acquire general jurisdiction of the case, and before any of them had been heard, five of the petitioners filed a written statement withdrawing their

names, which we think they had a right to do. It was error
to refuse their application to have their names stricken from
the petition. The jurisdiction of the court had not attached,
and these persons had the right to withdraw their names,
and the court erred in refusing to allow them to do so.

After refusing the prayer of these five petitioners the
court entered an order finding that the petition contained the
signatures of a majority of the owners of land within the
proposed district who were of lawful age and who repre-
sented more than one-third in area of the land included in
the district, and it is insisted that this finding is conclusive.
Manifestly the court included the five persons who were re-
fused the right to withdraw. Their signatures were attached
to the petition. The court refused to allow them to with-
draw and then found that the petition contained the signa-
tures of a majority, etc. We cannot accept this as a finding
that the petition contained the requisite number of petition-
ers exclusive of the five who attempted to withdraw.

The next ground of reversal urged by plaintiffs in error
is, that there was no order of record finding the drainage dis-
trict duly established, as provided by law. The order of the
county court finds "that the said drainage district of the cor-
porate mentioned in said petition, viz., the Polecat drainage
district, bounded as follows: (Here follows a description of
the lands included.) And it is further ordered by the court
that the commissioners of said district may make any and all
assessments of benefits, or damages and benefits, in lieu of a
jury, and that all proceedings required of a jury under the
act under which this district is organized shall be required
of and performed by the commissioners, as near as may be,
in making such assessment."

The form of an order creating a district is found in sec-
tion 16 of the Drainage act, and the objection of plaintiffs in
error is that the latter part of that section is omitted, namely,
"is duly established as provided by law." The various days
at which the orders were entered by the county court in the

organization of this district do not appear from the abstract. of record, but it is very apparent that the order as entered by the court creating the district was defective in the respect complained of by plaintiffs in error. This defect was called to the attention of the county court by proper objection. This objection was overruled and order entered confirming the roll as made. From this order an appeal was prayed, and afterwards, at the October term, 1904, an order was entered *nunc pro tunc* as of May 18, 1903, inserting the words "is duly established as provided by law," thus completing the form of an order as provided by statute.

It is a well settled rule of law that a court has no right to enter a judgment *nunc pro tunc* at a subsequent term unless the judgment was in fact rendered at the previous term and was not entered of record through some fault, neglect or oversight, and in such case the fact that the court did give judgment at the previous term can only be proved by some memorial paper or minute in the case at such former term. The judgments and records of courts cannot rest in parol upon so uncertain a foundation as the personal recollection of the judge or any other person, and the fact that a judgment was rendered at a former term cannot be determined from the memory of witnesses or the personal recollection of the judge himself. Where there is no minute or memorial paper in the records of the court to show that judgment was in fact pronounced, it cannot be so entered. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Walsh,* 150 Ill. 607; *Tynan* v. *Weinhard,* 153 id. 598; *Ayer* v. *City of Chicago,* 149 id. 262; *Chicago, Burlington and Quincy Railroad Co.* v. *Wingler,* 165 id. 634.) Mere clerical errors and omissions may be corrected in judgments and orders of court, but the omission in the order in question was one which went to the very existence of the drainage district which was sought to be organized. This correction was made not from any written order as it appeared in the record of the court, unless it can be said that the defective order itself was suffi-

cient upon which to base the correction. No order was in fact entered creating the district, and this omission was one which could not be corrected by an order *nunc pro tunc.* Especially would this be the case where the omission had been called to the attention of the court and overruled and exception preserved and an appeal prayed, and pending such appeal the record could not be corrected so as to deprive appellants from recovering their costs necessarily incurred in prosecuting the appeal. For this error the judgment of the county court will have to be reversed.

The question has been raised by counsel for defendant in error whether any objection going to the regularity of the organization of the district can be raised upon this writ of error, the contention being, as we understand, that in order to raise any such question an appeal or writ of error should have been prosecuted from the order establishing the district, as provided in section 16 of the statute. As we have said, this proceeding is under the act of May 29, 1879, providing for the organization of drainage districts for agricultural, sanitary and mining purposes. The final order of the court under the act, as provided in section 25, is the confirmation of the assessment roll, and it is there provided that appeals or writs of error shall be allowed therefrom as in case of appeals from and writs of error to the county court in proceedings for the sale of lands for taxes or special assessments. This is the first appeal or writ of error provided for in the act. All other orders of the court are interlocutory, and an appeal or writ of error from the final order confirming the asessment roll brings up for review the order of the court declaring the district duly organized.

Other errors are called to our attention, but as those above noted go to the very existence of the drainage district, we deem it unnecessary to here consider them.

The judgment of the county court is reversed and the case is remanded for further proceedings in accordance with the views herein expressed. *Reversed and remanded.*