MISSISSIPPI BEN. ASS'N *et al. v.* BROOKS.

(Division B. Jan. 16, 1939.)

[185 So. 569. No. 33515.]

(Division B.   Jan. 30, 1939.)

[185 So. 817.  No. 33515.]

Cowles Horton, of Grenada, for appellants.

Walter D. Davis, of Winona, for appellee.

**Cowles Horton,** of Grenada, for appellants on Suggestion of Error.

460

**Ethridge, P. J.,** delivered the opinion of the Court.

Henrietta Brooks, plaintiff in the court below, was the assignee of a policy or certificate issued to Rasmus Curtis and family, consisting of Rasmus Curtis, Lora Curtis, his wife, and Charlie Curtis, who lived with Rasmus Curtis as a member of the family, and who was a minor sixteen years of age. The policy or certificate contracted for a funeral in the amount of $125, and was issued upon an application contract which reads as follows:

"I hereby apply for a benefit contract, covering each member of my family as listed below:

| Name of Applicant | Age | Dues |
| --- | --- | --- |
| Rasmus Curtis | 44 | 25 |
| Lora Curtis | 43 | 25 |
| Charlie Curtis | 16 | 25 |
| Total Dues per Month | | 75 |

"Street address or rural route ———
"City or town Kilmichael, Mississippi.
"Occupation Farmer (of head of family)

"This policy to be issued and be in full force and effect on the 1st day of February, 1936. Subsequent premiums due on the 1st day of each month hereafter. I hereby certify that myself and family are enjoying the best of health; that no member of my family or myself is at present afflicted with Cancer, Tuberculosis, Heart or Kidney Disease, Insanity, or other serious illness. Signed at home, Mississippi, on the 26 day of Jan. 1936.

"Witness: Mrs. Walter Branch, Agent.
"Name of applicant in full: Rasmus Curtis.

"To Be Filled at Home Office.

"Date of Certificate 2-1-1936. Funeral Director's Approval, Lee.

"Certificate No. 58, 117.

"Endorsed on back: Filed 7-25-38. H. D. Horn, Clerk.

"Received of Rasmus Curtis $Pd. Covering Membership Fee, and the sum $Pd. Covering the first month's dues for a Benefit Contract in the Mississippi Benefit Association, Grenada, Mississippi. Policy to be issued and be in full force and effect on the 1st day of Feb. 1936.

"This receipt is for a policy to be issued on the 1st or 15th of the month. Policies are only issued on the 1st or 15th of each month and do not go in benefit until the 1st or 15th, whichever is the date of issue. Lee F. Home, Agent.

"Endorsed on back: Filed June 6th, 1938. Filed 7-25-38, "H. D. Horn, Clerk.                              Exhibit A."

It appears from this receipt that the policy was to be issued on the first day of February, 1936; and also that no policies were issued by the Funeral Benefit Association except to take effect on the first and fifteenth of the month following the application. The policy contract or certificate was duly issued, and bears date of February 1, 1936, but had not been received by Rasmus Curtis on the day it was issued, being in the mails, whence it reached him in due course. The record shows the above-mentioned application to have been taken by Mrs. Branch, a solicitor for the Lee Funeral Home, that the application was sent to the Association by the Funeral Home, and that the application was taken out and signed by Lora Curtis, wife of Rasmus Curtis. Rasmus Curtis was informed of the death of Charlie Curtis—whose real name was Charlie Wortham—by a telegram, and thereupon went to Grenada, Mississippi, from his home in Kilmichael, where he found the body of Charlie Wortham, otherwise known as Charlie Curtis, at the funeral home of Garner Brothers. He did not mention the burial contract to anyone before the funeral of the deceased, as

the policy or certificate was not delivered to him through the mail until after the funeral. It is stated that after receiving the funeral contract he came to Grenada and advised Garner Brothers thereof, but made no proof of death thereunder. This was before Garner Brothers was paid for the funeral expenses by Henrietta Moore, who had contracted to pay $175 therefor, by the assignment to Garner Brothers of a policy on the life of Charlie Curtis or Wortham. Henrietta Moore was the latter's mother, his father having predeceased him. The deceased was interred under the name of Charlie Wortham, and none of the defendants knew, prior to his burial, that Charlie Curtis and Charlie Wortham were one and the same person. Rasmus Curtis assigned the burial policy or certificate to Henrietta Moore, who brings this suit thereon.

A telegram was introduced in evidence, but it did not indicate the hour of the death of Charlie Curtis or Wortham. It reads as follows: "Grenada, Mississippi, February 1, 1936. Rasmus Curtis, Kilmichael, Mississippi. Your son Charlie killed come at once Henrietta Moore. 9:45 A."

The Board of Health record of the death was also introduced, showing the date of death to be February 1, 1936, but not the hour of death; that his death was caused by a gunshot wound; that the deceased was a male, of the black or colored race, single, aged eighteen years; gave his name as Alex Worthum; the maiden name of his mother as Henrietta Williams; of the informant as Henrietta Brooks, and place of burial as Kilmichael; cause of death as homicidal, date of injury 2-1-36, hour not given; name of undertaker, Garner Brothers. It appears from the record that the body was brought to the funeral home near seven o'clock, A. M.

There was a judgment in the court below for the appellee, Henrietta Moore, from which this appeal is prosecuted.

It was argued that the policy had not been received by

the assured at the time of the death of the deceased, and that the deceased was not in good health at the time of the delivery of the policy, but was dead. It will be noted from the application that the premium was paid prior to the first of February, and that it called for a policy to be effective on February first. The policy, therefore, was in effect at the earliest period of February first, 1936, and the policy holder was entitled to the benefits under the policy as it existed at that time.

Under our decisions, a day begins at midnight and ends the following midnight. The policy and the application did not fix any hour within this day at which the policy would be effective, and consequently it took effect at the earliest moment of February first. See O'Quinn v. State, 131 Miss. 511, 95 So. 513; Pannell v. Glidewell, 146 Miss. 565, 111 So. 571.

While it appears that the deceased, Charlie Curtis or Wortham was killed on February 1st, the earliest time shown by the record was when his body reached the funeral home in the early morning of the first, around seven o'clock. His death was not caused by disease, but by a gunshot wound, and it must be assumed that it occurred subsequent to the first hour of the day, and it is probable that the gunshot wound produced sudden and instant death.

In construing contracts it is a familiar rule to give such construction as will make the policy effective. Under the application, the Funeral Benefit Association was bound, as stated above, at the beginning of the day of February first. The fact that the policy was not actually received by Rasmus Curtis on February first is immaterial. The policy, by the terms of the certificate, was to be effective on February first, and was actually issued and put in the mail, and under its terms became effective on February first—that is to say, at the beginning of that day, which was the hour of midnight.

The argument that the deceased was not in good health

when the policy was delivered is without merit. There is no showing that the representations as to the health of the members of the family were false, and it was clearly contemplated that, in referring to health, it was in relation to disease, and not to sudden death by extraneous agencies.

We think the judgment of the court below was correct, and the judgment is affirmed.

Affirmed.

**McGehee, J.,** delivered the opinion of the Court on Suggestion of Error.

As shown by the opinion rendered on a former day in this cause, the appellant collected the first premium under an application for a burial benefit contract which provided that the same should be in full force and effect on the 1st day of February, 1936, and the receipt for such premium given by the agent specified that the payment was to cover the first month's dues. That is to say, the premium covered the period of one month beginning at midnight of January 31, 1936.

The case was tried on an agreed statement of facts, and the application, receipt and the policy contract were introduced as exhibits thereto. The policy bears date of February 1st, but the record is silent as to the day or hour when it was placed in the mail. It appears from the application, wherein the occupation and address of the applicant is given, that the assured lived at Vaiden, and that the home office of the company is at Grenada. The application states that the assured is a farmer, and we assume that he lived out from Vaiden, since it would be unusual for a colored farmer to live in town. Since the application covered two other members of the applicant's family, including Charlie Wortham, alias Charlie Curtis, whose body was shown to have been in the undertaker's establishment as early as 7 o'clock on the morning of February 1st after he had been shot and killed on

the same morning, there was a recital in the agreed statement of facts in reference to the delivery of the policy to the applicant and to the effect that "it was not delivered until after the burial through the mail to him." We are unable to determine from the entire agreed statement of facts whether the above quoted statement means that the policy was not placed in the mail at Grenada until after the death and burial of Charlie Curtis, or whether this language means that it was not received by the applicant out of the mail at Vaiden until after such death and burial. From the entire record, we are of the opinion that the statement is subject to the latter meaning. At any rate, since the policy sued on shows on its face that it should be so construed as to take effect at the earliest moment of February 1st, and it appeared that Charlie Curtis came to his death between that time and 7 o'clock in the morning, we think that the burden was on the appellant to establish as an affirmative defense that the policy was not actually placed in the mail until after his death. For aught that appears from this record, the policy may have been filled out, signed and placed in the mail on the day before, even if it be true, as argued by appellant, that the company had all of the entire day of February 1st to issue the same. The fact as to when the policy was actually placed in the mail was presumably within the knowledge of the appellant, and this fact should have been clearly recited in the agreed statement of facts or established by the proof.

For the reasons above stated, we have reached the conclusion that the judgment of the court below was correct without reference to the ground on which the former opinion rests, and that therefore the suggestion of error should be overruled.

Suggestion of error overruled.