ALLISON; et al. *v.* CAMP CREEK DRAINAGE DIST.

Division B. Apr. 9, 1951.

No. 37915 (51 So. (2d) 743)

H. G. Johnston and Barnett, Jones & Montgomery, for appellants.

Paul Bowdre, Wells, Wells, Newman & Thomas, for appellees.

**Ethridge, C.**

This case raises the question of whether the signer of a petition for creation of a drainage district may make a second change of mind and withdraw his withdrawal after the time set in the clerk's published notice for filing of proponents' and contestants' petitions, but before the end of that day and the hearing. Appellants, S. J. Allison and Mrs. Paul Edwards, appealed from a decree of the Chancery Court of DeSoto County, Mississippi, establishing the Camp Creek Drainage District of DeSoto County, Mississippi, which is an appellee herein, along with D. B. Bridgeforth and other proponents for the creation of the District.

Appellee District is a drainage district with local commissioners created under the provisions of Chapter 195, Miss. Laws 1912, Code of 1942, Secs. 4674-4679. On September 2, 1949, the chancellor, by decree, temporarily organized the District and appointed temporary commissioners, as provided by Code Sec. 4675. These commissioners selected an engineer who made a survey and

report to them on recommended development of the District. This report was filed and the chancery clerk then published notice to all property owners within the District "to appear before the Hon. Herbert Holmes, Chancellor, in Vacation on March 9, 1950 at 10:00 A.M. at the courthouse, Hernando, Mississippi to show cause in favor of or against the establishing of said District." This notice was published under the authority of Miss. Code of 1942, Sec. 4676, which provides that after the report is filed, the clerk shall fix a "date" for the hearing, and "At the time named" the chancellor shall hear all property owners. Further provision for the hearing is made in Code Sec. 4678. "If upon the hearing provided for in the foregoing sections a petition is presented to the chancery court, or the chancellor in vacation, signed by a majority of the landowners owning one-third of the land, or, one-third of the landholders owning a majority of the land, praying that the improvements be made, it shall be the duty of the court or chancellor to make the order establishing the district, without further inquiry, if it appear that the establishment thereof be necessary for the promotion of public health and for agricultural purposes; provided, however, that if upon that day a petition signed by a majority of the landowners owning one-third of the land, or one-third of the landowners owning a majority of the land, be presented praying that the improvements be not made, it shall be the duty of the court or chancellor to so order, but if no such petition is filed it shall be the duty of the court or chancellor to investigate as provided in the preceding sections, and to establish such drainage districts as he is of the opinion the establishment thereof will be to the advantage of the owners of real property therein, and is for the public benefit. And the petition provided for therein may be signed by women, whether married or single, owning land in the proposed district; guardians may sign for their wards, and trustees, executors and administrators may sign for the estates represented by them, and if the sig-

nature of any corporation thereto is attested by the corporate seal, the same shall be sufficient evidence of the assent of the corporation to said petition.''

Code Sec. 4679 states that ''The order of the chancery court, or chancellor in vacation, establishing such drainage districts shall have the force of a judgment.''

On the day set in the notice, March 9, proponents of the District filed at 9:36 A.M. four separate petitions asking for its permanent organization. Six of the signers had previously signed petitions objecting to the District and here were revoking those objections and affirming their positions as proponents. These proponents' petitions filed at 9:36 A.M., March 9, contained, appellants admit, the signatures of one-third of the landowners owning a majority of the land in the District. At 10:00 A.M., March 9, the petitions of the proponents of the District, appellees here, were the only ones on file, so at the time set in the published notice appellees had a petition adequate for permanent creation of the district.

When 10:00 A.M. arrived, attorneys for both sides requested the court to recess for a short while until they could reduce the number of issues between them. This was done and at 1:30 P.M., March 9, appellants, contestants of the organization of the District, filed two petitions against the organization of the district, which together contained a majority of the 72 landowners in the District owning one-third of the land. When contestants had filed their petitions at 1:30 P.M., they were adequate under Sec. 4678 to prevent the organization of the District. However, several persons were on petitions both for proponents and for contestants.

Appellees did not move to strike the late petitions of appellants, but objected to them being filed after 10:00 A.M., the time set in the notice. In answer to the objection of appellees' attorney to the late filing of contestants' petitions, counsel for appellants stated to the chancellor that Section 4678 does not designate any particular time for petitions to be filed, but only states ''if upon

that day''. In reply to a question by the court that ''according to that, you would have until 12:00 tonight,'' appellants' attorney answered. ''Yes, sir, it could be had at any time. The hearing could be had any time this day . . .'' The trial court agreed with this position and held that the time for filing petitions did not expire until 12:00 midnight on the return day, March 9. Hence the court of its own motion continued the hearing until the next morning, March 10.

After that recess on March 9, and between 9:00 and 10:45 P. M. that night, six of the persons who had signed both petitions, including the appellants' objections to the District, filed petitions withdrawing from contestants' petition and asking for the organization of the District. The trial court overruled appellants' objections to the filing of these additional proponents' petitions, in which they revoked their previous withdrawals from earlier proponents' petitions. It held that, considering them, appellants had an insufficient number of objectors and appellees had an adequate petition for the permanent creation of the District, which contained more than one-third of the landowners owning a majority of the land. It then heard evidence on whether the District would be to the advantage of landowners and would promote public health and agricultural purposes, found in the affirmative on those issues, which finding appellants do not contest, and by decree, permanently created the District, from which this appeal is taken.

Appellants question only the right of the six additional proponents to file petitions with the clerk removing their names from the contestants' petitions and inserting them on proponents' petitions after the adjournment of the court on March 9, 1950. Appellants say that the court should have acted upon the petitions that had been presented to it on March 9, before it adjourned; that under Code Secs. 4676 and 4678, the chancellor can consider only petitions filed with the clerk on or before the hearing on the return day; that proponents' petitions

filed on the night of March 9 were too late and could not be considered under the above statutory provisions; and that when the court adjourned on March 9 it then had before it adequate petitions objecting to the District, and it was then the court's duty to so adjudicate. Appellants admit their petitions were filed late, at 1:30 P. M., but say that appellees failed to move to strike them and thereby waived that objection. Appellants concede that the court could, by order, postpone the hearing; that, if the hearing is begun but not completed on the return day, it could continue it from day to day until completed; that, although Code Sec. 4062 requires the clerk's office to remain open from 8-5 P. M., the clerk could keep his office open day and night. But they say that the court is restricted by the statutes to the issue and the petitions made by the pleading *during the hearing* on the return day, March 9, and the hearing on that day had terminated before the withdrawal petitions were filed.

The issue is determined by (a) statutory construction, (b) principles applicable to the question of when a petition may be withdrawn and a withdrawal petition revoked, and (c) rules governing the chancellor's control over his docket, amendments, and the parties' rights to determine their participation in a suit.

 Code Sec. 4676 provides that the hearing on the engineer's report must be ''upon a date to be fixed'' by the chancery clerk. And ''At the time named in said second notice,'' the chancellor will hear property owners. Sec. 4678 provides that ''If upon the hearing provided for in the foregoing sections'', a petition is presented in adequate form, the chancellor will establish a district ''provided, however, that if upon that day'' the stated number of objectors file petitions, the district shall not be established. We do not think that these provisions preclude the filing of proponents' or objectors' petitions at any time during the day set for the beginning of the hearing. The ''date'' or ''day'', and the word ''hearing''

in Sec. 4678 means at least a full day of twenty-four hours in determining when a petition can be filed. O'Quinn v. State, 1923, 131 Miss. 511, 95 So. 513; Tripp Furniture Co. v. Cox, 1931, 160 Miss. 90, 133 So. 238; Winchester v. State, 1932, 163 Miss. 462, 142 So. 454; Pannell v. Glidewell, 1927, 146 Miss. 565, 111 So. 571; Carter v. Henry, 1906, 87 Miss. 411, 39 So. 690; Love Petroleum Company v. Atlantic Oil Producing Company, 1934, 169 Miss. 259, 152 So. 829, 153 So. 389; Mississippi Benefit Association v. Brooks, 1938, 184 Miss. 451, 185 So. 569, 817; Childs v. Board of Supervisors of Webster County, 1930, 157 Miss. 495, 128 So. 338. The petitions filed on the night of March 9 were properly considered by the chancellor.

 The better and perhaps the general rule is that one can withdraw from a petition at any time prior to the termination of the hearing (or some courts hold the final decree), but we pretermit any decision on that proposition, because under the present facts it is necessary only to say that petitioners had at least through the twenty-four hour return day of March 9 to withdraw their withdrawal petitions. However, this established general rule confirms the application of the statutes to the present facts. 28 C. J. S., Drains, Sec. 20, page 294; 17 Am. Jur., Drains and Sewers, Sec. 39; 19 C. J., Drains, Secs. 62, 63, pages 645-646; Note, 11 L. R. A., N. S., 372 (1908); 35 L. R. A., N. S., 1113 (1912); Note, Ann. Cas. 1915C, 9, 17 (1915); Note 60 L. R. A. 161, 173 (1903); Note, 126 A. L. R. 1031, 1039, 1045, 1075 (1940); Collins v. Barrier, 1886, 64 Miss. 21, 8 So. 164, and Rogers v. Hahn, 1886, 63 Miss. 578, held that counter withdrawal petitions for a liquor license could be filed at any time prior to final action. See also Bookout v. Board of Supervisors of Itawamba County, 1912, 103 Miss. 413, 60 So. 568; Romberger v. Board of Mayor and Aldermen of Water Valley, 1885, 63 Miss. 218; Price v. Sims, 1918, 116 Miss. 687, 77 So. 649; Perkins v. Henderson, 1891, 68 Miss. 631, 9 So. 897, revocation of withdrawal; Mack v. Polecat

Drainage District, 1905, 216 Ill. 56, 74 N. E. 691; In re Central Drainage District, 1907, 134 Wis. 130, 113 N. W. 675; Maxwell v. Terrell, 1923, 37 Idaho 767, 220 P. 411; Hansmeyer v. Indian Creek Drainage District No. 2, 1918, 284 Ill. 458, 120 N. E. 321; In re Bernalillo County Drainage District No. 1, 1919, 25 N. M. 171, 179 P. 233. See especially Note, 126 A. L. R. 1031 (1940), at pages 1039-1054, and pages 1075-1077, revocation of withdrawals.

██ Moreover, the present holding is in accordance with and confirms the established powers of the chancellor to control the methods of disposition of his docket. Code Sec. 1232 deals with postponements and continuances in vacation, and Sec. 1243, with similar problems in term time. Griffith, Mississippi Chancery Practice, 2d ed. 1950, Secs. 560, 561. The action of a trial court in postponing or continuing a cause is not reversible unless there was an abuse of discretion. Griffith, ibid. Sec. 582. And of course amendments are liberally allowed in this type of case in order to prevent delay and injustice. Code Sec. 1302; Griffith, ibid. Secs. 388-398, 393; State ex rel. Granite Inv. Co. v. Superior Court of Washington, 1924, 131 Wash. 20, 228 P. 842; In re Rocky Run Drainage District, 1922, 177 Wis. 524, 188 N. W. 493. Further, a party to a suit in chancery has the right to take without prejudice a voluntary dismissal "up to the time when the cause has been submitted to the chancellor for final decision upon the merits of the case." Griffith, ibid. Secs. 534, 535; Code Secs. 1538, 1539. ██ Landowners should have the right also to advise the court at the hearing that they have changed their opinions about the organization of a drainage district.

The purpose of the statutory procedures for creation of drainage districts is to obtain the opinions and votes of a majority of those affected, either in number or land ownership. They recognize the liberty of individual action where no injury may result to the persons immediately concerned or to the public at large. Second

and third thoughts are often sounder that the original idea. The individual has the right to apply his best judgment and mature consideration to the matter. The action taken by the chancellor was in accord with this statutory policy, as well as with the terms of the act and analogous precedents.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the action of the lower Court is affirmed.