In re REFERENDUM PETITION NO. II, CITY ORDINANCE NO. 7375, CITY OF OKLAHOMA CITY.

Lee Roy KITTRELL et al., Plaintiffs in Error,

v.

H. P. JOHNSON et al., Defendants in Error.

No. 36783.

Supreme Court of Oklahoma.

Feb. 28, 1956.

R. L. Dugger, Oklahoma City, for proponents.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling, and Raymond Gramlich, Oklahoma City, for protestants.

JACKSON, Justice.

On September 14, 1954, the City Council of the City of Oklahoma City, Oklahoma, passed Ordinance No. 7375, which required the installation of taxi meters in all taxi cabs operating in said City. Thereafter on October 14, 1954, the proponents herein, Lee Roy Kittrell, et al., filed their Referendum Petition No. 11, with the City Clerk of said City, and thereafter, in due time, protests were filed to said Referendum Petition by H. P. Johnson, et al., protestants herein.

This is an appeal by the proponents of the Referendum Petition from the action of the City Clerk in declaring the Petition insufficient.

Hearing upon the protest was held de novo before a referee of this court who has reported the petition insufficient. Proponents have filed exceptions to the report based, first, upon the referee's finding of fact that 2,440 signers of the petition were not registered voters of Oklahoma City as determined by the records of the County Election Board; and second, upon his conclusion of law that their signature upon the petition was therefore invalid.

It was established at the hearing that the records of the County Election Board, against which the sufficiency of the petition was checked, contained a complete list, as of October 14, 1954, of only those voters who had registered in accordance with S.B. 448 of the Twenty-fourth Legislature, Chap. 2b, S.L.1953, p. 104, 26 U.S.Supp. § 103.1 et seq.

That Act, which became effective June 4, 1953, provided for and directed a re-registration of all electors of certain counties, including Oklahoma County, and further provided (with certain exceptions not material here) that no person in said county shall be permitted to vote after February 1, 1954, unless he shall have been registered under the provisions of said Act. It further provided for notice to be given as to the times and places when and where the voters might re-register. It was also provided in the Act that when the re-registration therein provided for became complete, the old certificates and books of registration in use before said re-registration would be invalidated and cancelled and the records of the re-registration shall be the sole evidence of the registration of the electors of the county.

It was further established at the hearing that the re-registration in Oklahoma County had been conducted in accordance with the provisions of S.B. 448, supra, and that on and after February 1, 1955, the records of the County Election Board were up-to-date and complete so as to truly reflect the names of all the voters of Oklahoma City who had re-registered prior to October 14, 1954, pursuant to said Act.

This court has heretofore held In re Initiative Petition No. 142, State Question No. 205, 176 Okl. 155, 55 P.2d 455, that only those persons who are registered voters are eligible to sign initiative or referendum petitions. The court therein construed the

applicable constitutional and statutory provisions touching upon the question and we deem it unnecessary to reiterate here the reasoning upon which the decision was based.

This brings us to the principal issue in this case whether the signers of this petition may be disqualified simply because their names do not appear upon the re-registration records compiled under the provisions of said S.B. 448, irrespective of whether they had been previously registered and held registration certificates, valid under the prior prevailing law.

In this connection proponents invite our attention to a statement of this court in Fitzpatrick v. Childs, 102 Okl. 166, 228 P. 485, 486, wherein this court said:

"When an elector has once been lawfully registered, pursuant to the provisions of that section of the statutes, [§ 6252, C.O.S.1921, 26 O.S.1951 § 74] he can never be required to again register except in event 'the qualifications of electors of the state of Oklahoma are changed by constitutional amendment,' as provided by section 6264, C.O.S.1921 [26 O.S.1951 § 86]."

An examination of the cited case discloses that the court was there passing upon the validity of the act of the County Election Board in conducting a re-registration of voters without statutory authority for so doing. The quoted language had reference only to the powers of the county election officials and in no way did it attempt to define the power of the legislature with respect to providing for re-registration.

■ In the instant case the re-registration was conducted and new records compiled in accordance with statutory regulations. If it is within the province of the legislature to enact laws setting up a system of registration of electors and to provide that an elector must be registered in order to exercise his privilege to vote, it necessarily follows that the legislature is empowered to amend such laws and to provide therein for a re-registration and to invalidate registration certificates theretofore issued.

It is further contended by the proponents that, even if S.B. 448 is held to be applicable, the Act does not require mandatory re-registration, but provides that the county election board may, by unanimous vote, waive the re-registration in any precinct where such board finds there has been no fraud practiced or illegal voting allowed, and that the provisions of the Act do not require that a person be registered twice to be eligible to sign a Referendum Petition.

■ This contention is not well taken. The Act does direct the county registrar to conduct a general re-registration and provides that records shall be compiled therefrom which records shall be the sole evidence of the registration of electors of the county. It further provides that old certificates and books of registration in use theretofore be invalidated and cancelled. These provisions leave no room for doubt but that in those precincts where re-registration has not been waived, the electors therein must have been re-registered in accordance with the provisions of the Act in order to qualify as registered voters, and be thereby qualified to sign Initiative and Referendum Petitions.

Lastly, it is contended that the finding by the referee that the 2,440 challenged signers were not registered as reflected by the records of the re-registration was not supported by competent evidence.

The evidence relied upon in support of the finding was an exhibit containing a list of the challenged signatures together with the respective addresses. This exhibit was compiled by an expert witness who testified that she had made a complete check of the official registration records and that none of the 2,440 names listed in the exhibit were listed in the registration records. The witness admitted that the accuracy of her examination was not beyond the possibility of human error and that there might be instances of a signer giving a new address or a change of name by marriage not reflected by the records which she would have been unable to detect.

■ However, there was no evidence offered that a single person among those

challenged was in fact registered. In the absence of any evidence to show error in the result of the examination made by the witness, we see no reason for holding her evidence incompetent.

For the reasons herein given, we hold that the Referendum Petition was insufficient.