BOARD OF EDUCATION OF DEPEND-
ENT SCHOOL DISTRICT NO. 23 OS-
AGE COUNTY, Oklahoma, a/k/a Indian
Camp School, Appellant,

v.

T. E. ALLEN, County Superintendent of
Schools, Osage County,
Oklahoma, Appellee.

No. 55453.

Supreme Court of Oklahoma.

Aug. 7, 1980.

As Corrected Aug. 15, 1980.

Jernigan, Groves, Bleakley & Tague by Eric J. Groves, Oklahoma City, Bill Hall, Pawhuska, for appellant.

Larry Stuart, Pawhuska, for appellee.

OPALA, Justice:

This contest over the sufficiency of a petition to abolish a school district presents a controversy over two unsettled dimensions. One of these mathematically uncertain dimensions is the size of the "electorate" applicable by law to the school district in question. The other dimension—legislatively set as equal to 60 per cent of the electorate we must yet define—is the numerical and legal sufficiency of the signatures counted as valid.

At the very first we are called upon to ascertain the number of persons who are eligible electors in the affected school district. To identify these persons we must define with precision their legal qualifications. Only then can we determine whether the petition under challenge here does in fact contain the requisite number of signatures[1] to do away with a school district. The issue thus thrust upon us for initial resolution is: Was there a vitiating infirmity in the petition initiated under the terms of § 8–106[2] to "dispense with" Dependent School District No. 23 [Indian Camp School District], because the percentage of required signatures was calculated on the number of "registered voters" rather than on the number of *all* the eligible "electors" in that district? If there was no infirmity in the approach taken, there remains but one dispositive challenge to the petition's sufficiency: Did the county superintendent of schools—who held the petition sufficient—err as a matter of law when he considered three names to have been reinstated by the signer's telephone request made after an earlier withdrawal of the signature?

We hold that: [a] an "elector", within the meaning of § 8–106, is one who possesses the very same qualifications as those required of an initiative or referendum petition signer and, additionally, has a "child eligible to attend school in the grades offered" in the school or school district sought to be abolished and [b] an oral request to reinstate one's signature, which had been previously withdrawn in writing from a § 8–106 petition, must be effected in writing, i. e., with the very same formality as that required by law for signing the petition originally. The completed withdrawals, all made in writing, must hence be regarded as unaffected by the subsequent ineffectively-executed oral reinstatement requests. Without the reinstated signatures, the petition under challenge here fails to contain the requisite number of signators to effect an abolition of Indian Camp School District.

---

1. The "requisite number" of signators is a percentage (60%) of the total eligible electors in the district. See footnote 2 for text of the applicable enactment.

2. A school district may be "dispensed with" either by petition or *via* an election. The provisions of 70 O.S.1971 § 8–106 provide in pertinent part:

 "Upon a majority vote of the school district electors having children eligible to attend school in the grades offered in a school district, voting at the annual school district election or a special school district election called for such purpose and held not later than June 30, *or upon a petition signed by sixty percent (60%) of the school district electors having children eligible to attend school in the grades offered in a school district,* filed with the county superintendent of schools before June 30, either the high school . . ., or the grade school . . ., or both, shall be dispensed with for the ensuing year and all of the pupils who would be entitled to attend school in the grades dispensed with shall be transferred to another school district or districts maintaining courses of instruction which such pupils are entitled to pursue. Provided the county superintendent of schools shall have five (5) days to determine the validity of a petition presented to him to dispense with school and to notify the State Board of Education. * * * Provided, that any district which dispenses with its entire school district for the ensuing year, as provided herein, shall mandatorily annexed on July 1 by the *State Board of Education to an* adjacent district or districts to which pupils of such dispensed district have been transferred. * * *" [Emphasis added]
 All text references to sections in the statutes are to 70 O.S.

In May of 1980 a petition was circulated among the residents of Indian Camp School District to abolish the school district and to transfer the students to another district or cause the annexation by other school districts.[3] The petition was filed with the superintendent of schools [superintendent], together with a list of persons believed to represent all the school district electors who are qualified by statute to sign the petition. No less than 60 percent of the school district's electors with children eligible to attend school in the grades offered by the school district must sign the petition to make it legally sufficient. The superintendent is the official statutorily charged with the responsibility to pass upon the validity of a § 8–106 petition and to notify the State Board of Education of his decision within five days after filing of the petition is effected.[4]

The superintendent ruled that the signatures approved by him as effective represented 60.27 percent of the qualified electors and hence the petition was legally sufficient to abolish the school district. The challenger here and below is the Board of the school district sought to be dispensed with. In the district court the Board sought a writ declaring the petition ineffective. The trial court sustained the superintendent's demurrer to the Board's evidence and this appeal followed.

## I

The Indian Camp School District is composed of several partial precincts. The county election board cannot from its records readily identify which voters registered in the several precincts live within the Indian Camp School District. The election records do not reflect whether any voter in the district has children eligible to attend school in that district. There is *no* established procedure for making the statutorily-contemplated determination of eligibility.

In order to ascertain that the total number of signers represented the requisite 60 percent of qualified electors, the superintendent was first called upon to determine the *total number* of "electors" to be dealt with. A list of electors believed to represent the totality stood submitted as an exhibit to the petition. The superintendent made that exhibit available to the Board. It was free to suggest additions or deletions of names.

Before the statutory five-day review period had ended and before the initial hearing date, several changes in the list came to be effected. All names of those who were found not to be registered as voters were removed. The names on the petition were then checked against school records and school transfer records. This helped to verify that the signer was a parent of children currently enrolled in school.

In § 8–106 two methods are provided for disestablishing a school district: [1] by majority vote of school district electors at an annual or special election or [2] *by petition signed by 60 percent of school district electors.* Our sole concern here is, of course, with the second method.

■ The Board contends that the term "elector", as used in § 8–106, is not the same as that of "registered voter". If this be true, the petition and the accompanying list are invalid because "registered voter" restriction prevented others from being counted as "electors". The Board asserts that "nonregistered" school district electors should be deemed legal voters although they have not complied with registration requirements for the exercise of their right to vote. Want of registration, we are urged, does not prohibit a person from exercising one's statutory right of petition nor from being included in the total count of qualified electors.

We find the Board's argument unpersuasive. A person qualified to vote in a school district election "must be registered with the county election board at an address located within the geographical boundaries of the district." 70 O.S.Supp. 1974 § 2–

---

**3.** § 8–106, supra note 2.

**4.** § 8–106, supra note 2.

102.[5] A school district elector—in order to exercise the right to decide by election or petition whether a school should be dispensed with—must also have "children eligible to attend school in the grades offered in a school district." § 8–106.

Although § 2–102 does not expressly deal with the qualifications for signing a school-related petition, we view the statute as clearly intended to govern, with equal force, the qualifications for signing § 8–106 petitions, as well as for eligibility to cast a vote in any school election. The petition under consideration here bears an unmistakable analogy to initiative or referendum process. This is because it initiates a legal process which, if successful, operates to transform the initial step into a perfected legal act. A signator of an initiative or referendum petition must be a registered voter.[6] The law surely did not intend to empower a nonregistered elector to set in motion any machinery or process which he or she is ineligible to affect at the ballot box. We refuse to embrace a statutory construction that would create an absurdity. The legislature simply could not contemplate an *electorate to be composed of one class* for a decision on a school's fate when it is effected by a petition and an *electorate of quite another mix* or composition for determination of the very same question at the ballot box.[7]

The petition here in suit goes far in its legal sweep. It does not merely initiate proceedings to determine, at a future election, the fate of the Indian Camp School District—nay, it decides that fate by disestablishing the school district. The petition is in its effect a "species or form of election". In short, the list of electors qualified in the district must represent all those persons who could cast a choice at the ballot box if the election-method had been utilized to disestablish the district.

II

The Board challenges on several grounds the correctness of procedure followed in determining the qualifications of certain challenged signers. We need not reach all of these grounds since we find but one of the contentions raised is dispositive of the appeal.

Three signers timely withdrew their signature from the petition. Their withdrawals were in writing and witnessed by two disinterested persons. After these withdrawals were effected, but still within the five-day review period, each of these three persons was believed to have reinstated his/her signature by a telephone request to an office assistant. The assistant could not make positive identification of the callers who sought reinstatement. The record does not reflect that the oral requests had been

5. Both parties *may have overlooked* the quoted 1974 amendment to § 2–102. Before the effective date of that amendment, § 2–102 provided in pertinent part:

"A school district elector, qualified to vote in any school district election, is any person who has resided in the district for a least twenty (20) days and who possesses the qualifications of electors as defined by the Constitution and laws of the state. * * *"

6. Art. V § 2, Okl.Con.; 34 O.S.1971 §§ 1–3; *In re Initiative Petition No. 142, State Question No. 205*, 176 Okl. 155, 55 P.2d 455–460 [1936]; *In re Referendum Petition No. 11, City Ordinance No. 7375, City of Oklahoma City, Okl.*, 294 P.2d 548 [1956].

7. We find pertinent on this point the rationale of *Ahrens v. Kerby*, 44 Ariz. 269, 37 P.2d 375, 379 [1934] in which a similar reasoning was articulated:

"Such a requirement is in harmony, not merely with the spirit of the initiative and referendum, but with the very nature of democratic government itself, because under it the individual is sovereign and exercises his power through the ballot; hence, *it is reasonable to presume that it was foreign to the purpose of those who gave form to the constitution to empower unregistered electors to set in motion the machinery of the law by which measures upon which they themselves could not vote might be brought before those who could.* They were evidently of the view that since, in the process of securing the judgment of the voters on a proposed or referred measure, it is just as necessary that a petition to place it on the ballot be filed as it is that a vote on it thereafter be had, no one should be permitted to aid in accomplishing the former *who had not placed himself in a position to take part in the latter*, the final solution of the problem." [Emphasis added]

later reduced to writing and made part of the superintendent's record in the proceeding. When the reinstated signatures came under challenge by the Board, the superintendent confirmed he had relied for reinstatement solely upon the verbal communications between the callers and his office.

There is *no* statutory authority for either a withdrawal or reinstatement of a signature on a § 8–106 petition. We have on several occasions upheld the rule authorizing the withdrawal after a petition—initiative, referendum, or school district consolidation or annexation—has been filed but before action is taken thereon.[8] In all those cases withdrawal had been effected by a written instrument. The "great majority of cases recognize the right of withdrawal as incidental to the right of petition itself."[9] We hold the rationale—that not to allow a withdrawal before final action is taken on the petition would be a "harsh and unreasonable rule"[10]—is equally applicable to reinstatement as it is to withdrawal.[11]

The integrity of the process for dispensing with a school district pursuant to § 8–106 absolutely requires that the petitioners be identified by their signature.[12] Both the act of a signature's withdrawal, as well as that of its reinstatement, are but two examples of a post-filing amendatory process which, when effectively executed, materially alters the contents and may even destroy the legal efficacy of the petition. *Every withdrawal and every reinstatement is truly an amendment to the petition.* It is for this reason that a signer's will—either to withdraw or to reinstate his signature— must be declared of record by the very same medium as that statutorily-mandated for use in communicating the signer's original act by which he or she joins the petition.

■ In short, both withdrawal and reinstatement *must*: [a] be in writing, [b] clearly declare the signer's will with respect to the signature once affixed to the petition and [c] be received by the superintendent

8. *In re Initiative Petition No. 2, City of Chandler*, 170 Okl. 507, 41 P.2d 101 [1935]; *In re Conservancy District No. 37*, Okl., 398 P.2d 525, 529 [1965]; *State v. School Dist. No. 97, Blaine County*, 186 Okl. 177, 97 P.2d 548, 549–550 [1939]; *Mills v. Lynch*, 121 Okl. 101, 247 P. 981 [1926]; *School Dist. No. 24 of Custer Co. v. Renick*, 83 Okl. 158, 201 P. 241 [1921]; *Hendricks v. McCreary*, Okl., 467 P.2d 478 [1970]; *In re Warren School Dist. Election*, Okl., 384 P.2d 49 [1963]; *Ramsey v. County Commissioners of Payne County*, 149 Okl. 289, 300 P. 389 [1931].

9. *In re Initiative Petition No. 2, City of Chandler*, supra note 8, 41 P.2d at 102.

10. *In re Initiative Petition No. 2, City of Chandler*, supra note 8, 41 P.2d at 102.

11. The court in *Dansby School District No. 34 v. Haynes School District No. H*, 210 Ark. 500, 197 S.W.2d 30 [1946] dealt with a statute similar to the one in suit—the dissolution of a school district and its annexation by petition process. In *Dansby*, the withdrawal of a signature from the petition was authorized by statute. The court felt the purpose of the statute would be furthered by permitting a person whose signature had been withdrawn to reinstate it before final action on the petition. In *Hoffman v. Nelson*, 1 Neb. 215, 95 N.W. 347, 349 [1901] the court said: "We do not feel justified in a purely statutory matter, such as

this, in placing any restriction upon the free action of a citizen which the law has not placed there, and which no consideration of good morals or even propriety seems, to require. *We do not discover anything improper in a citizen, who thinks he is now better advised, changing his mind a second time as to the expediency of having such an election.*" [Emphasis added] The conclusion so reached also finds support in *Perkins v. Henderson*, 68 Miss. 631, 9 So. 897 [1891]; *Horton v. Botts*, 158 Ky. 11, 164 S.W. 352 [1914]; *Allison v. Camp Creek Drainage Dist.*, 211 Miss. 354, 51 So.2d 743 [1951].

12. Since the power to withdraw from the petition must also be in writing, the reinstatement of one's signature, once it is removed, should also be done with the very same solemnity and formality as that required for the original inclusion in the petition. In *Halgren v. Welling*, 91 Utah 16, 63 P.2d 550, 556 [1936] the argument was advanced that a person having once signed an initiative petition may not withdraw his name except by instrument executed with the same formality and sanctity as that of the petition which he has signed. In short, the withdrawal must import the same formal verity as the petition from which a person desires to withdraw. The court in *Halgren* felt that the important thing to be determined, when a signer of a petition desires to withdraw his name, is his identity..

before final action is taken on the petition.[13] We may hence accord no force and effect to an oral reinstatement of one's signature upon a petition which is required by law to be in writing.[14]

 The numerical sufficiency of the petition *must* appear from the instruments of which it is comprised [15] without the aid of extrinsic proof.[16] Without an effective and timely reinstatement of the three names, the petition admittedly lacks the requisite 60 percent of all local electors.[17] We therefore hold, as a matter of law, that the petition is numerically insufficient to "dispense with" the Indian Camp School District.

The trial court's judgment is reversed with directions to declare the petition insufficient and implement its ruling by an appropriate writ.

LAVENDER, C. J., and WILLIAMS, HODGES, DOOLIN and HARGRAVE, JJ., concurring.

---

13. The power to amend the petition by withdrawal or reinstatement of a signature is extinguished by operation of law when final action on the petition has been taken.

14. Less formality is required of a § 8–106 petition than that prescribed for an initiative or referendum petition. The terms of § 8–106 do not appear to require a circulator's affidavit as do the provisions of 34 O.S.1971 § 6 for initiative and referendum petitions. It is hence conceivable that formalities other than those applicable here might be necessary to effectuate a withdrawal or reinstatement of one's signature upon an initiative or referendum petition. We do not reach that issue here.

15. The "instruments" are comprised of the petition together with the written withdrawals and reinstatements.

16. *Community Gas and Service Company v. Walbaum*, Okl., 404 P.2d 1014, 1016 [1965].

17. The superintendent determined that the total number of eligible electors was 73 and that the petition contained the signatures of 44 of those electors. Without the 3 signatures—withdrawn in writing from the petition—the signatures represent only 56.16% of the total electors in the district. The petition is hence numerically insufficient on the face of the written instruments of which it is comprised.